1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  LOS MOLINOS MUTUAL WATER              No.  2:21-cv-01961-DAD-DMC
    COMPANY, et al.,
12
                    Plaintiffs,
13
            v.                            ORDER GRANTING THE BOARD
14                                        DEFENDANTS' MOTION TO DISMISS AND
    ERIK EKDAHL, et al.,                  GRANTING IN PART AND DENYING IN
15                                        PART THE DEPARTMENT DEFENDANTS'
                    Defendants.           MOTION TO DISMISS
16
                                          (Doc. Nos. 31, 39)
17

18          This matter is before the court on the motion to dismiss filed by defendants Erik Ekdahl,

19  Eileen Sobeck, E. Joaquin Esquivel, Dorene D'Adamo, Sean Maguire, Laurel Firestone, and

20  Nichole Morgan (collectively, "Board defendants") on March 25, 2022, and the motion to dismiss

21  filed by defendants California Department of Fish and Wildlife (the "Department") and Charlton

22  Bonham (collectively, "Department defendants") on May 24, 2022.  (Doc. Nos. 31, 39.)  The

23  pending motions were taken under submission by the previously assigned district judge on April

24  26, 2022 and June 7, 2022, respectively.[1]  (Doc. Nos. 36, 41.)  For the reasons explained below,

25  the motion to dismiss brought on behalf of the Board defendants will be granted, and the motion

26

27  _____

    [1]  On August 25, 2022, this case was reassigned to the undersigned.  (Doc. No. 44.)  The
28  undersigned has endeavored to work through a backlog of inherited submitted motions in civil
    cases as quickly as possible since returning to the Sacramento courthouse just over one year ago.

                                                  1

1  to dismiss brought on behalf of the Department defendants will be granted in part and denied in

2  part.

3  **BACKGROUND**

4        On February 25, 2022, plaintiffs Los Molinos Mutual Water Company ("Los Molinos"),

5  Peyton Pacific, LLC ("Peyton"), and Stanford Vina Ranch Irrigation Company ("Stanford Vina")

6  filed their operative first amended complaint ("FAC") in this action challenging emergency

7  regulations and water curtailment orders promulgated by the California State Water Resources

8  Control Board ("Board") in response to extreme drought conditions occurring in 2021.  (Doc. No.

9  16.)  Plaintiffs did not name the Board as a defendant but rather brought this lawsuit against the

10  Board defendants in their official capacities as members of the Board and staff employed by the

11  Board.[2]  (*Id.* at 1.)  In addition, plaintiff Stanford Vina is asserting claims against the Department

12  and its executive director, Charlton Bonham, in his official capacity, for allegedly abandoning

13  fish ladders and screens intended to protect threatened Central Valley Spring Run Chinook

14  Salmon ("salmon") and California Central Valley Steelhead ("steelhead").  (*Id.* at ¶ 165.)

15  Plaintiffs allege as follows in their FAC.

16        Plaintiffs and their shareholders own land in the vicinity of Mill Creek and Deer Creek in

17  Tehama County, California, and hold and administer water rights appurtenant to their land

18  holdings.  (*Id.* at ¶¶ 6–8.)  Specifically, plaintiffs possess "adjudicated water rights" that permit

19  them to divert water from Mill Creek (Los Molinos and Peyton) and Deer Creek (Stanford Vina)

20  that is used for approximately 11,000 acres of irrigated land, including "for permanent plantings,

21  including orchards, and for irrigated pasture, stock watering, and similar beneficial uses."  (*Id.*)

22  Los Molinos and Stanford Vina have also invested in water-related infrastructure to divert and

23  distribute water for the use of their shareholders.  (*Id.* at ¶¶ 6, 8.)

24        On April 21, 2021, Governor Gavin Newsom issued a proclamation declaring a drought

25  state of emergency in California and directed state agencies to take certain actions in response to

26  ———————————

27  [2]  The Board defendants are:  Erik Ekdahl, the deputy director of the division of water rights at the Board; Eileen Sobeck, the executive director of the Board; E. Joaquin Esquivel, the chair of the Board; Dorene D'Adamo, the vice chair of the Board; and Sean Maguire, Laurel Firestone,

28  and Nichole Morgan, members of the Board.  (Doc. No. 16 at ¶ 9.)

1   the drought.  (*Id.* at ¶ 46.)  On May 10, 2021, Governor Newsom issued another proclamation

2   related to the drought emergency which directed the Board and the Department to work with

3   water users and other parties on voluntary measures to implement actions needed to protect

4   salmon, steelhead, and other native fishes.  (*Id.* at ¶ 47.)

5          Meanwhile, on or about May 5, 2021, representatives from the Department, the Board,

6   and the National Marine Fisheries Service ("NFMS") invited Stanford Vina and Los Molinos to

7   discuss the 2021 water conditions and fish passage in Deer Creek and Mill Creek.  (*Id.* at ¶ 33.)

8   Plaintiffs allege that during this meeting, Stanford Vina and Los Molinos were given "an

9   ultimatum":  that they submit a proposal to ensure fish passage in 2021, otherwise the Board

10  would adopt and impose emergency regulations that would curtail plaintiffs' water rights.  (*Id.*)

11  In response, Stanford Vina and Los Molinos submitted proposals for implementing "multi-benefit

12  channel restoration projects" as well as "fishery protection proposals," which included a request

13  for compensation for water transferred for instream use.  (*Id.* at ¶ 34.)  The Board, the

14  Department, and NFMS allegedly rejected these proposals explaining that they did not have

15  authority to authorize the measures that plaintiffs had proposed.  (*Id.* at ¶ 35.)  Despite rejecting

16  these proposals from Los Molinos and Stanford Vina, "water users on Mill [Creek] and Deer

17  [Creek] did coordinate with [the Department] and NMFS to voluntarily implement pulse flows in

18  the Spring of 2021 for benefit of fishery [sic], while minimizing impacts to agricultural beneficial

19  uses."  (*Id.* at ¶ 37.)  The 2021 spring salmon run that followed these voluntary measures was,

20  according to plaintiffs, "very large" and "excellent."  (*Id.* at ¶¶ 38, 41.)

21         On September 1, 2021, however, plaintiffs allege that all defendants issued a notice of

22  proposed emergency rulemaking proposing the adoption of emergency regulations to implement

23  minimum instream flows to protect anadromous fish and provide other public uses.  (*Id.* at ¶ 49.)

24  Plaintiffs allege that the effect of the proposed emergency regulations would require them, and

25  their shareholders, "to forbear from exercising their vested rights to use water from Deer and Mill

26  Creeks during irrigation season, thereby eliminating those rights."  (*Id.*)  On September 22, 2021,

27  defendants Esquivel, D'Admo, Maguire, Firestone, and Morgan considered the proposed

28  emergency regulations at a regularly scheduled meeting of the Board.  (*Id.* at ¶ 55.)  Plaintiffs

allege that at that meeting of the Board, no evidentiary hearing was held regarding the emergency regulations despite plaintiffs requesting such a hearing and pointing out that if the emergency regulations were adopted and implemented an "inverse condemnation and taking would occur." (*Id.* at ¶ 56.)  Plaintiffs also allege that their requests to cross-examine employees of the Department, the Board, and NMFS who presented on the purported merits of the emergency regulations at the meeting were denied.  (*Id.* at ¶ 57.)  At the conclusion of the Board's September 22, 2021 meeting, defendants Esquivel, D'Admo, Maguire, Firestone, and Morgan approved Resolution No. 2021-0038, which adopted the proposed emergency regulations, with some minor modifications.  (*Id.* at ¶ 59.)  On October 4, 2021, the California Office of Administrative Law approved the proposed emergency regulations, specifically, California Code of Regulations Title 23, §§ 876.5, 876.7, 878.4 and amended §§ 878.1 and 879 ("emergency regulations"), which then went into effect.  (Doc. No. 16 at ¶ 59.)

The emergency regulations declared that any diversions from Deer Creek and Mill Creek would be deemed an "unreasonable use" if the diversions by water rights holders—no matter the reason or purpose for the diversions—reduced the flow in those two creeks below a minimum threshold set forth in the emergency regulation, specifically, California Code of Regulations Title 23, § 876.5.  (*Id.* at ¶ 60.)  The minimum instream flows set forth in the emergency regulations were deemed the "bare minimum" to ensure passage for anadromous fish on Deer Creek and Mill Creek and those flow rates vary based on the time of year and the presence of certain anadromous fish.  *See* Cal. Code Regs. tit. 23, § 876.5(c).  As a result of the emergency regulations, plaintiffs allege that they are prohibited from diverting any water in Deer Creek and Mill Creek if those diversions would interfere with achieving the minimum instream flows for fish.  (Doc. No. 16 at ¶ 60.)  Importantly, the emergency regulations authorized defendant Ekdahl to issue curtailment orders if he determined that continued diversions of water would interfere with achieving the minimum instream flows.  (*Id.*) (citing Cal. Code Regs. tit. 23, § 876.5).

Plaintiffs allege that, on October 11, 2021, defendants issued Water Rights Orders 2021-0089 (Mill Creek) and 2021-0090 (Deer Creek) ("curtailment orders"), which ordered the water rights holders on those creeks, including plaintiffs, to curtail their diversion of water beginning on

4

October 15, 2021.  (Doc. No. 16 at ¶ 65.)  Plaintiffs allege that the effect of the curtailment orders and emergency regulations is that their "vested water rights . . . have been damaged and the reasonable value of the water was taken for public use by defendants."  (*Id.* at ¶ 67.)

In addition to plaintiffs' challenge brought against the emergency regulations and curtailment orders, plaintiff Stanford Vina asserts several additional claims against the Department defendants.  Specifically, plaintiffs allege that the Department "accessed, operated, and maintained fish ladders and screens that it designed and installed" on plaintiff Stanford Vina's main diversion dam on Deer Creek for over 60 years.  (*Id.* at ¶ 87.)  Plaintiffs allege that on June 18, 2021, the Department defendants informed Stanford Vina that they would no longer operate and maintain the fish ladders and fish screens at Stanford Vina's diversion dam on Deer Creek until Stanford Vina executed a "Memorandum of Agreement" detailing the respective parties' responsibilities in maintaining the fish ladders and screens.  (*Id.* at ¶ 89.)  According to plaintiffs, following the Department's refusal to maintain its fish ladders and screen, debris accumulated and blocked the fish ladder located on Stanford Vina's dam in October 2021, and although the Department was aware of this situation it refused to clear the blockage due to Stanford Vina's failure to sign the memorandum of agreement.  (*Id.* at ¶ 90.)  Plaintiffs allege that this "caused harm and a 'take' to salmon and steelhead" and that the "imminent risk of mortality continues through the present so long as the [Department defendants] refuse to fulfill repairs and maintenance obligations."  (*Id.* at ¶¶ 91–92.)  Plaintiffs also allege that the Department defendants refused to install both "protective shields over the fish screens" for protection when there are stormflow conditions and "motors necessary for the utilization of the screens and diversion of water through them."  (*Id.* at ¶¶ 94–95.)  These additional failures by Department defendants also allegedly present an ongoing risk of harm to salmon and steelhead.  (*See id.*)

Based on the foregoing allegations in their FAC, plaintiffs assert the following nine claims against the Board defendants:  (1) a 42 U.S.C. § 1983 claim for the taking of real property without compensation in violation of the Fifth and Fourteenth Amendments; (2) a § 1983 claim for a legislative taking of property without compensation in violation of the Fifth and Fourteenth Amendments; (3) a § 1983 claim for the taking of real property without compensation through the

curtailment orders in violation of the Fifth and Fourteenth Amendments; (4) a § 1983 claim for the taking of real property without compensation through the emergency regulations in violation of the Fifth and Fourteenth Amendments: (5) a § 1983 claim for the failure to hold an evidentiary hearing in violation of plaintiffs' right to procedural due process under the Fifth and Fourteenth Amendments; (6) a § 1983 claim for the failure to hold an evidentiary hearing with regard to the curtailment orders in violation of plaintiffs' right to procedural due process under the Fifth and Fourteenth Amendments; (7) a § 1983 claim for the failure to hold an evidentiary hearing with regard to the emergency regulations in violation of plaintiffs' right to procedural due process under the Fifth and Fourteenth Amendments; (8) a claim brought under Article X, Section 2 of the California Constitution; and (9) a claim for violation of the public trust doctrine.  (Doc. No. 16 at ¶¶ 102–62.)  Plaintiff Stanford Vina also asserts the following five additional claims against the Department defendants:  (10) a claim brought under § 9 of the Endangered Species Act ("ESA"); (11) a § 1983 claim for the taking of real property without compensation in violation of the Fifth and Fourteenth Amendments; (12) a § 1983 claim for the failure to hold an evidentiary hearing in violation of its right to procedural due process and the Fifth and Fourteenth Amendments; (13) a claim for declaratory relief; and (14) a state law nuisance claim.  (Doc. No. 16 at ¶¶ 163–206.)

On March 25, 2022, the Board defendants filed a motion to dismiss all claims asserted against them.  (Doc. No. 31.)  On April 7, 2022, plaintiffs filed an opposition to the Board defendants' pending motion (Doc. No. 32), and the Board defendants filed their reply on April 18, 2022 (Doc. No. 34).  On May 24, 2022, the Department defendants file a motion to dismiss all of the claims asserted against them.  (Doc. No. 39.)  On June 6, 2022, plaintiffs filed an opposition to the Department defendants' pending motion (Doc. No. 40), and the Department defendants filed their reply on June 16, 2022 (Doc. No. 42).[3]

---

[3]  On November 22, 2022, the undersigned issued an order giving effect to a stipulation between the parties in which they agreed that if the court denies either of the pending motions to dismiss or grants either of them with leave to amend, then plaintiffs will be permitted to include in any further amended complaint claims challenging the regulations, resolutions, and curtailment orders that were promulgated in 2022.  (Doc. Nos. 55, 56.)

1    <center>**LEGAL STANDARD**[4]</center>

2    **A.       Rule 12(b)(1) – Lack of Subject Matter Jurisdiction**

3            "Federal courts are courts of limited jurisdiction and are presumptively without

4    jurisdiction over civil actions." *Howard Jarvis Taxpayers Ass'n v. Cal. Secure Choice Ret. Sav.*

5    *Program*, 443 F. Supp. 3d 1152, 1156 (E.D. Cal. 2020) (citing *Kokkonen v. Guardian Life Ins.*

6    *Co.*, 511 U.S. 375, 377 (1994)), *aff'd*, 997 F.3d 848 (9th Cir. 2021). Federal courts "possess only

7    that power authorized by Constitution and statute, which is not to be expanded by judicial

8    decree." *Kokkonen*, 511 U.S. at 377 (internal citations omitted). Subject matter jurisdiction is

9    required; it cannot be forfeited or waived. *Howard Jarvis Taxpayers Ass'n*, 443 F. Supp. 3d at

10   1156. Indeed, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the

11   court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

12           Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may

13   "challenge a federal court's jurisdiction over the subject matter of the complaint." *Nat'l Photo*

14   *Grp., LLC v. Allvoices, Inc.*, No. 3:13-cv-03627-JSC, 2014 WL 280391, at *1 (N.D. Cal. Jan. 24,

15   2014). "A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the

16   challenger asserts that the allegations contained in a complaint are insufficient on their face to

---

18   [4] Defendants have purportedly brought their respective motions to dismiss under Federal Rule of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), but they have failed to clearly differentiate

19   between these three different bases in their pending motions. (*See* Doc. Nos. 31 at 2; 31-1 at 7; 39 at 2–3.) Based on the court's review of the pending motions, defendants' mention of Rule

20   12(b)(2) will be disregarded because neither motion involves a challenge to personal jurisdiction. Rather, defendants argue that several claims are barred by state sovereign immunity—the Board

21   defendants contend that plaintiffs' claims 1–4 and 8–9 are barred, while the Department defendants contend all of plaintiffs' claims asserted against the Department (claims 10–14) and

22   claims 11 and 14 asserted against defendant Bonham are barred. (Doc. Nos. 31-1 at 10–12, 16–17; 39-1 at 11–12, 17–18, 20.) Because the challenges to the complaint based on state sovereign

23   immunity under the Eleventh Amendment are deemed "quasi-jurisdictional," they can be brought under Rule 12(b)(1) or 12(b)(6). *See Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 927 n.2

24   (9th Cir. 2017). The Board defendants also argue that this court lacks subject matter jurisdiction to hear plaintiffs' procedural due process claims (claims 5–7) under the *Rooker-Feldman*

25   doctrine, and the Department defendants contend that this court lacks subject matter jurisdiction over plaintiff Stanford Vina's declaratory judgment claim (claim 13). These challenges to the

26   court's subject matter jurisdiction are properly brought under Rule 12(b)(1) and will be addressed

27   before defendants' arguments raised under Rule 12(b)(6). *See* Fed. R. Civ. P. 12(b)(1); *Wolfe v.*

28   *Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

<center>7</center>

1   invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)

2   (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).  A party making a facial attack does

3   not submit supporting evidence with the motion because jurisdiction is challenged based solely on

4   the pleadings.  *Howard Jarvis Taxpayers Ass'n*, 443 F. Supp. 3d at 1156; *see also Diva*

5   *Limousine, Ltd. v. Uber Techs., Inc.*, 392 F. Supp. 3d 1074, 1084 (N.D. Cal. 2019) ("[C]ourts do

6   not consider evidence outside the pleadings when deciding a facial attack.") (citation omitted).

7   Important for purposes of resolving the pending motion, it has been recognized that "[t]he district

8   court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6):  [a]ccepting the

9   plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the

10  court determines whether the allegations are sufficient as a legal matter to invoke the court's

11  jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  However, the court need

12  not assume the truth of legal conclusions cast in the form of factual allegations.  *Warren v. Fox*

13  *Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

14          "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by

15  themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at

16  1039.  In ruling on a party's factual attack, district courts "may review evidence beyond the

17  complaint without converting the motion to dismiss into a motion for summary judgment." *Id.*

18  The movant may "rely on affidavits or any other evidence properly before the court," and the

19  party opposing the motion must then "present affidavits or any other evidence necessary to satisfy

20  its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair v.*

21  *City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) (citing *Thornhill Publ'g Co. v. Gen. Tel. & Elec.*

22  *Corp.,* 594 F.2d 730, 733 (9th Cir. 1979)).

23          Here, the court construes defendants' motions as mounting facial attacks under Rule

24  12(b)(1) because neither motion to dismiss relies on materials outside of the FAC, aside from

25  documents that are the subject of the Board defendants' request for judicial notice (Doc. No. 31-

26  /////

27  /////

28  /////

2),[5] which are ordinarily considered by the court when analyzing the face of the complaint.  *See*

*Carpenter v. OneWest Bank, FSB*, No. 12-cv-00895-MMM-OP, 2012 WL 13012420, at *2 (C.D.

Cal. Apr. 25, 2012) ("Even when deciding a facial attack, however, a court can look beyond the

complaint to consider documents that are proper subjects of judicial notice.") (collecting cases).

## B.  Rule 12(b)(6) – Failure to State a Claim

The purpose of a motion to dismiss brought pursuant to Rule 12(b)(6) is to test the legal

sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901

F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to

relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.

Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the

court accepts as true the allegations in the complaint and construes the allegations in the light

most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  However,

---

[5]  The Board defendants request that judicial notice of four documents be taken:  (1) a copy of a state appellate court's decision in *Stanford Vina Ranch Irrigation Company v. State*, 50 Cal. App. 5th 976 (2020); (2) a copy of the Board's Finding of Emergency, Informative Digest, and Revised Fiscal Impact Statement (Sept. 24, 2021) issued in connection with the adoption of the emergency regulations; (3) a copy of Water Rights Order 2021-0089 (Oct. 11, 2021); and (4) a copy of Water Rights Order 2021-0090 (Oct. 11, 2021).  The court will take judicial notice of the existence of these four documents as matters of public record.  *See Full Circle of Living & Dying v. Sanchez*, No. 2:20-cv-01306-KJM-KJN, 2023 WL 373681, at *2 n.1 & n.2 (E.D. Cal. Jan. 24, 2023) (taking judicial of "publications, statutes, and regulations related to the funeral industry" as well as government documents obtained from website run by California state agency); *Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002) (taking "judicial notice of the California Court of Appeal opinion and the briefs filed in that proceeding and in the trial court").  However, as plaintiffs correctly point out in their objection to the Board defendants' request for judicial notice (Doc. No. 33), the court will not take judicial notice of any facts contained within these documents—to the extent any exist—"that may be 'subject to reasonable dispute.'"  *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)).

1   the court need not assume the truth of legal conclusions cast in the form of factual allegations.

2   *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not

3   require detailed factual allegations, "it demands more than an unadorned, the-defendant-

4   unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers

5   mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."

6   *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements

7   of a cause of action, supported by mere conclusory statements, do not suffice.").  Moreover, it is

8   inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the

9   defendants have violated the . . . laws in ways that have not been alleged."  *Associated Gen.*

10  *Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

11                                          **ANALYSIS**

12          The court will first address the Board defendants' motion to dismiss plaintiffs' claims

13  asserted against them (claims 1–9).  Then the court will take up the Department defendants'

14  motion to dismiss the claims asserted against them only by plaintiff Stanford Vina (claims 10–

15  14).

16  **A.      The Board Defendants' Motion to Dismiss**

17          The Board defendants contend that the Eleventh Amendment bars plaintiffs' claims 1–4

18  and 8–9.  The court will first address these quasi-jurisdictional arguments and then consider

19  Department defendants' arguments for dismissal of plaintiffs' claims 5–7 under the *Rooker-*

20  *Feldman* doctrine or, alternatively, for failure to state a cognizable claim for relief.

21          1.      Eleventh Amendment – State Sovereign Immunity

22          The Eleventh Amendment prohibits federal courts from hearing suits brought by private

23  citizens against state governments without the state's consent.  *Hans v. Louisiana*, 134 U.S. 1, 15

24  (1890); *Sofamor Danek Grp. v. Brown*, 124 F.3d 1179, 1183 (9th Cir. 1997); *Nat. Res. Def.*

25  *Council v. Cal. Dep't of Transp.*, 96 F.3d 420, 421 (9th Cir. 1996).  The Eleventh Amendment

26  specifically provides states with a sovereign immunity from suit, as opposed to a nonwaivable

27  limit on the federal courts subject matter jurisdiction.  *Idaho v. Coeur d'Alene Tribe of Idaho*, 521

28  U.S. 261, 267 (1997); *see also Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 389 (1998).  This

1    state sovereign immunity extends to state agencies and to state officers who act on behalf of the

2    state regardless of the relief sought.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S.

3    89, 100 (1984); *Krainski v. Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d

4    963, 967 (9th Cir. 2010).

5         The Supreme Court has established an important limitation on state sovereign immunity.

6    *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254 (2011).  Specifically, the Eleventh

7    Amendment "does not bar claims seeking prospective injunctive relief against state officials to

8    remedy a state's ongoing violation of federal law."  *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*,

9    824 F.3d 858, 865 (9th Cir. 2016) (citing *Ex parte Young*, 209 U.S. 123, 149–56 (1908)).  This

10   limitation, known as the *Ex parte Young* exception, "rests on the premise . . . that when a federal

11   court commands a state official to do nothing more than refrain from violating federal law, he is

12   not the State for sovereign-immunity purposes."  *Stewart*, 563 U.S. at 255; *see also Pennhurst*,

13   465 U.S. at 102.  "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh

14   Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the]

15   complaint alleges an ongoing violation of federal law and seeks relief properly characterized as

16   prospective.'"  *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)

17   (quoting *Coeur d'Alene Tribe of Idaho*, 521 U.S. at 296).

18                    a.   *Federal Takings Clause Claims (Claims 1–4)*

19        In the Board defendants' pending motion, they argue that plaintiffs' takings claims

20   brought under the Fifth and Fourteenth Amendments are barred by state sovereign immunity as

21   provided for in the Eleventh Amendment.  (Doc. No. 31-1 at 9–11.)

22        As an initial matter, the Board defendants argue that the relief sought by plaintiffs in their

23   takings claims is "disguised" as a claim for monetary damages.  (Doc. No. 31-1 at 10.)  In

24   plaintiffs' FAC, some of their allegations indicate that they seek compensation for the past

25   diversion of water mandated by the Board's emergency regulations and curtailment orders.  (*See*

26   Doc. No. 16 at ¶¶ 103, 105, 110–11, 116.)  However, it is well established that the Eleventh

27   Amendment bars inverse condemnation actions brought under the Fifth Amendment's Taking

28   /////

Clause in federal court against state officials in their official capacities.[6]  *See Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 956 (9th Cir. 2008); *Jachetta v. United States*, 653 F.3d 898, 909–10 (9th Cir. 2011); *see also 74 Pinehurst LLC v. New York*, 59 F.4th 557, 570 & n.7 (2d Cir. 2023) ("[T]he overwhelming weight of authority among the circuits . . . have consistently held that sovereign immunity trumps the Takings Clause where, as here, the state provides its own remedy for an alleged violation.") (collecting cases).  Thus, it is clear that plaintiffs' takings claims asserted against the Board defendants are barred by state sovereign immunity to the extent that they seek the award of monetary damages for property that has allegedly been taken.  *See Schweitzer*, 523 F.3d at 956.

Plaintiffs argue in their opposition brief, however, that they are not seeking monetary compensation, but rather an injunction "requiring the [Board defendants] to comply with constitutional due process hearing and compensation requirements when undertaking these actions *in the future*."  (Doc. No. 32 at 14.)  As plaintiffs argue, "[t]his is not a case where injunctive relief is sought to physically stop the underlying actions that are alleged to constitute a taking"; rather, "the prospective injunctive relief sought through the FAC would allow defendants to continue taking plaintiffs' water and property through the regulations and orders … so long as constitutional hearing and compensation requirements were complied with going forward."  (*Id.* at 15–16.)  In advancing this argument, plaintiffs also point to the prayer for relief in their FAC, which requests the following relief as to their takings claims:  "a preliminary and permanent injunction prospectively prohibiting defendants from adoption, re-adoption, implementation, and enforcement of the emergency regulations and/or curtailment orders without holding a due process evidentiary hearing and without payment of just compensation for the taking of real property and real property rights"; and "[f]or declaratory relief that defendants' adoption and implementation of the emergency regulations and/or curtailment orders is unlawful."  (Doc. No.

---

[6]  "Inverse condemnation is a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant.  Inverse condemnation stands in contrast to direct condemnation, in which the government initiates proceedings to acquire title under its eminent domain authority."  *Knick v. Twp. of Scott, Pennsylvania*, __ U.S. __, 139 S. Ct. 2162, 2168 (2019).

16 at 57.)  In other words, plaintiffs contend that by characterizing the relief sought as an

"injunction *prospectively* prohibiting defendants" from taking their property without just

compensation, they fall within the *Ex parte Young* exception.  (Doc. No. 32 at 13–14.)

However, the Ninth Circuit has concluded that even if an inverse condemnation claim is

construed "as one seeking injunctive relief against state officers to force them to adhere to the

Constitution, as in *Ex parte Young*," such claims "cannot qualify as claims for prospective relief,

and *Ex parte Young* consequently does not apply."  *Schweitzer*, 523 F.3d at 956 (reasoning that

inverse condemnation actions seek "in a strict sense . . . not just compensation *per se* but rather

damages for the unconstitutional denial of such compensation").  And although plaintiffs seek to

distinguish the decision in *Schweitzer* by arguing that the remedy they seek is not the same as that

sought in an inverse condemnation action, the court must look to the remedies available in

connection with Fifth Amendment takings claims to determine whether the claims brought here

fall within *Ex parte Young*'s limitation on state sovereign immunity.  *See id.* ("The applicability

of the *Ex parte Young* exception turns on whether federal takings actions are properly

characterized as seeking prospective or retrospective relief.").  Here, the injunctive relief sought

by plaintiffs in their FAC—even if alleged to be "prospective"—is not consistent with the

remedies available in connection with their claim asserting Fifth Amendment violations.  Indeed,

"[a]s long as an adequate provision for obtaining just compensation exists, there is no basis to

enjoin the government's action effecting a taking."  *Knick*, 139 S. Ct. at 2176, 2179 (explaining

that "[g]overnments need not fear that our holding will lead federal courts to invalidate their

regulations as unconstitutional" because "[a]s long as just compensation remedies are available . .

. injunctive relief will be foreclosed").  In their FAC, plaintiffs have not alleged that they are

prevented from seeking just compensation for an alleged future taking of their water rights in

state court.  Because there are no allegations indicating that plaintiffs will be prevented from

bringing suit to recover just compensation remedies for any alleged future takings, plaintiffs

cannot seek injunctive or declaratory relief for the alleged violations of the takings clause.  *See id.*

at 2167–68.  When viewed from this remedial perspective, plaintiffs' FAC does not satisfy the *Ex

parte Young* exception because prospective injunctive relief is not available to them based on the

1    allegations in their FAC.  *See Laborers' Int'l Union of N. Am., Loc. 860 v. Neff*, 29 F.4th 325,

2    334–35 (6th Cir. 2022) (holding that a union could not sue the state to enjoin "future violations of

3    the Takings Clause" because the union's allegations in the complaint did not indicate that their

4    rights could not be vindicated through a remedy at law, such as a breach of contract suit); *EEE*

5    *Mins., LLC v. State of N. Dakota*, __ F.4d __, 2023 WL 5600296, at *5 (8th Cir. Aug. 30, 2023)

6    (rejecting the argument that an owner of mineral rights could rely on the *Ex parte Young*

7    exception to pursue a takings claim against the state, in part, because "equitable relief is

8    unavailable to enjoin an alleged taking of private property where, as here, a remedy at law is

9    available through a suit for just compensation in state court"); *Culinary Studios, Inc. v. Newsom*,

10   517 F. Supp. 3d 1042, 1065 (E.D. Cal. 2021) (concluding that the plaintiff's request for

11   declaratory and injunctive relief as to their takings claims did not provide a basis for the *Ex parte*

12   *Young* exception because there was no indication that the plaintiff could not seek just

13   compensation through state law procedures).  At bottom, plaintiffs' FAC does not plausibly allege

14   that plaintiffs do not have available to them—now or in the future—California's mechanism for

15   recovering just compensation for an alleged taking in violation of the Fifth Amendment.[7]

16          Accordingly, the Board defendants' motion to dismiss plaintiffs' takings claims brought

17   under the Fifth and Fourteenth Amendments will be granted.  Although the court is skeptical that

18   plaintiffs can allege sufficient facts necessary to assert a viable takings claims that can satisfy the

19   *Ex parte Young* exception given their failure to provide supporting legal authority in connection

20   _____

21   [7]  In addition, the court notes that plaintiffs' FAC does not make clear whether they are alleging
     that there is an ongoing violation of federal law, as required under *Ex parte Young*.  *See Verizon*

22   *Md., Inc.*, 535 U.S. at 645.  Indeed, plaintiffs argue in their opposition that they "seek injunctive
     relief to compel compliance with . . . compensation requirements *when defendants carry out the*

23   *taking in the future*."  (Doc. No. 32 at 17 (emphasis added); *see also id.* at 14 ("Plaintiffs seek an
     injunction requiring the [Board defendants] to comply with constitutional due process hearing and

24   compensation requirements when undertaking these actions *in the future*.").)  Thus, even if
     plaintiffs could plausibly allege facts indicating that they were unable to pursue monetary

25   damages for future takings, it remains unclear based on the arguments raised in their opposition
     brief, whether plaintiffs could also satisfy the requirement that there be an ongoing violation of

26   federal law for purposes of the *Ex parte Young* exception.  *See Merritts v. Richards*, 62 F.4th 764,

27   771–72 (3d Cir. 2023) (finding that plaintiff's takings claim did not qualify for *Ex parte Young*
     exception, in part, because an earlier action that had present effects did not mean that those

28   effects constituted an ongoing violation of federal law for purposes of *Ex parte Young*).

1   with the pending motion, the court will nonetheless, in an abundance of caution, grant the Board

2   defendants' motion to dismiss these claims with leave to amend.  *See Nat'l Council of La Raza v.*

3   *Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015) ("It is black-letter law that a district court must

4   give plaintiffs at least one chance to amend a deficient complaint, absent a clear showing that

5   amendment would be futile.").

6                              b.      *State Law Claims (Claims 8–9)*

7        Plaintiffs also assert two state law claims against the Board defendants which they bring

8   under Article X, Section 2 of the California Constitution, and the public trust doctrine.  (Doc. No.

9   16 at ¶¶ 147–62.)  The Board defendants argue in their pending motion that these two state law

10   claims are also barred under the Eleventh Amendment because state sovereign immunity bars

11   state law claims brought in federal court under pendent jurisdiction.  (Doc. No. 34 at 6) (citing

12   *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984) ("*Pennhurst*")).

13        "[T]he Eleventh Amendment bars the adjudication of pendent state law claims against

14   nonconsenting state defendants in federal court."  *Raygor v. Regents of Univ. of Minn.*, 534 U.S.

15   533, 540–41 (2002) (citing *Pennhurst*, 465 U.S. at 120).  The Ninth Circuit has repeatedly cited

16   "*Pennhurst* as standing for the proposition that federal courts are barred by the Eleventh

17   Amendment from deciding state law claims for injunctive or declaratory relief against state

18   officials."  *Ass'n of Christian Sch. Int'l v. Stearns*, No. 05-cv-06242-SJO-RZ, 2006 WL 8434678,

19   at *11 & n.6 (C.D. Cal. Aug. 8, 2006) (collecting Ninth Circuit cases).  As the Supreme Court

20   explained in *Pennhurst*:

21            when a plaintiff alleges that a state official has violated *state* law . .
               . the entire basis for the doctrine of [*Ex parte*] *Young* and *Edelman*
22            disappears.  A federal court's grant of relief against state officials
               on the basis of state law, whether prospective or retroactive, does
23            not vindicate the supreme authority of federal law.  On the contrary,
               it is difficult to think of a greater intrusion on state sovereignty than
24            when a federal court instructs state officials on how to conform
               their conduct to state law.  Such a result conflicts directly with the
25            principles of federalism that underlie the Eleventh Amendment.
               We conclude that [*Ex parte*] *Young* and *Edelman* are inapplicable in
26            a suit against state officials on the basis of state law.

27   *Pennhurst*, 465 U.S. at 106.

28   /////

                                          15

1    Here, in regard to their two state law claims, plaintiffs seek "declaratory relief that

2  defendants' adoption and implementation of the emergency regulations and/or curtailment orders

3  is unlawful." (Doc. No. 16 at 57.)  In other words, plaintiffs seek relief under state law against

4  the Board defendants, who are state officials sued in their official capacity.  "In a suit in which

5  relief would run against the state, *Pennhurst* indicates that plaintiffs must go to state court to

6  obtain relief based on state law." *Kollsman v. City of Los Angeles*, 737 F.2d 830, 837 n.18 (9th

7  Cir. 1984).  Accordingly, the Board defendants' motion to dismiss will be granted and plaintiffs'

8  state law claims asserted against those defendants will be dismissed without leave to amend.[8]  *See*

9  *Bradley-Aboyade v. Crozier*, No. 2:19-cv-01098-TLN-AC, 2020 WL 4475088, at *8 (E.D. Cal.

10  Aug. 4, 2020) (granting motion to dismiss without leave to amend where plaintiff brought state

11  law claim against defendant in his official capacity as the public records coordinator at Mule

12  Creek State Prison); *Ransom v. Lee*, No. 14-cv-00600-DSF-KK, 2017 WL 10525951, at *14, *16

13  (C.D. Cal. Apr. 20, 2017) (dismissing state law claims asserted against state officials in their

14  official capacity without leave to amend as barred under the Eleventh Amendment), *report and*

15  *recommendation adopted*, 2017 WL 10510170 (C.D. Cal. June 27, 2017).

16         2.    Federal Procedural Due Process (Claims 5–7)

17    Next, the Board defendants argue in their pending motion that plaintiffs' due process

18  claims brought under the Fifth[9] and Fourteenth Amendments are barred by the *Rooker-Feldman*

---

[8] Plaintiffs also argue that even if their claims are barred under the Eleventh Amendment, they
are properly heard under 28 U.S.C. § 1367(a).  (Doc. No. 32 at 18–19.)  This argument has been
explicitly foreclosed by the Supreme Court which has held "that § 1367(a)'s grant of jurisdiction
does not extend to claims against nonconsenting state defendants."  *Raygor*, 534 U.S. at 542.

[9] Plaintiffs' three procedural due process claims (claims 5–7) asserted against the Board
defendants are brought under both the Fifth and Fourteenth Amendments.  (Doc. No. 16 at ¶¶
131, 141, 144.)  "The Fifth Amendment's Due Process Clause applies to the federal government
while the Fourteenth Amendment's Due Process Clause applies only to the states." *Clifton v.*
*United States Dep't of Just.*, 615 F. Supp. 3d 1185, 1202 (E.D. Cal. 2022) (citing *Castillo v.*
*McFadden*, 399 F.3d 993, 1002 n.5 (9th Cir. 2005)).  Here, because the Board defendants are not
part of the federal government, (Doc. No. 16 at ¶ 9), plaintiffs' procedural due process claims
(claims 5–7) are dismissed without leave to amend to the extent that they are predicated on the
Fifth Amendment.  *See Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008) (finding that the
district court erred in failing to dismiss Fifth Amendment due process claims asserted against a
local governmental official).

1  doctrine.  (Doc. No. 31-1 at 12–14.)  Alternatively, the Board defendants argue that if the court

2  determines that the *Rooker-Feldman* doctrine does not apply, plaintiffs have failed to state

3  cognizable procedural due process claims in their FAC.  (Doc. No. 31-1 at 12–16.)  The court will

4  address each argument in turn.

5           a.       Rooker-Feldman *Doctrine*

6           "The *Rooker-Feldman* doctrine instructs that federal district courts are without jurisdiction

7  to hear direct appeals from the judgments of state courts."  *Cooper v. Ramos*, 704 F.3d 772, 777

8  (9th Cir. 2012).  The doctrine is limited to "cases brought by state-court losers complaining of

9  injuries caused by state-court judgments rendered before the district court proceedings

10 commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil*

11 *Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 291–92 (2005).

12          In addition, the doctrine "bars a federal district court from exercising subject matter

13 jurisdiction 'not only over an action explicitly styled as a direct appeal, but also over the "de facto

14 equivalent" of such an appeal.'"  *Hooper v. Brnovich*, 56 F.4th 619, 624 (9th Cir. 2022) (quoting

15 *Morrison v. Peterson*, 809 F.3d 1059, 1070 (9th Cir. 2015)).  When analyzing whether the

16 *Rooker-Feldman* doctrine applies, "a district court first must determine whether the action

17 contains a forbidden de facto appeal of a state court decision."  *Bell v. City of Boise*, 709 F.3d

18 890, 897 (9th Cir. 2013).  "To determine whether an action functions as a de facto appeal, we

19 'pay close attention to the *relief* sought by the federal-court plaintiff.'"  *Cooper*, 704 F.3d at 777–

20 78 (quoting *Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 (9th Cir. 2003)).  As the Ninth Circuit has

21 explained:

22          A de facto appeal exists when "a federal plaintiff asserts as a legal
          wrong an allegedly erroneous decision by a state court, and seeks
23          relief from a state court judgment based on that decision."  In
          contrast, if "a federal plaintiff asserts as a legal wrong an allegedly
24          illegal act or omission by an adverse party, *Rooker-Feldman* does
          not bar jurisdiction."  Thus, even if a plaintiff seeks relief from a
25          state court judgment, such a suit is a forbidden de facto appeal only
          if the plaintiff *also* alleges a legal error by the state court.
26

27 *Bell*, 709 F.3d at 897 (9th Cir. 2013) (quoting *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003))

28 (internal citation omitted); *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004) ("[F]or

17

*Rooker-Feldman* to apply, a plaintiff must seek not only to set aside a state court judgment; he or she must also allege a legal error by the state court as the basis for that relief."); *see also Skinner v. Switzer*, 562 U.S. 521, 531 (2011) (explaining that *Rooker-Feldman* is limited to instances where "[t]he losing party in state court[] filed suit in a U.S. District Court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking federal-court review and rejection of that judgment").

In other words, "if a plaintiff presents an independent claim in federal court, federal jurisdiction is not defeated by the fact that the parties litigated the 'same or a related question' earlier in state court." *Morrison*, 809 F.3d at 1070 (quoting *Skinner*, 562 U.S. at 532); *see also Mothershed v. Justs. of Supreme Ct.*, 410 F.3d 602, 606 (9th Cir. 2005) ("The doctrine does not . . . prohibit a plaintiff from presenting a generally applicable legal challenge to a state statute in federal court, even if that statute has previously been applied against him in state court litigation."); *Noel*, 341 F.3d at 1164 ("The *Rooker-Feldman* doctrine asks:  is the federal plaintiff seeking to set aside a state judgment, or does he present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party?").

Finally, "[i]f 'a federal plaintiff seeks to bring a forbidden de facto appeal, . . . that federal plaintiff may not seek to litigate an issue that is "inextricably intertwined" with the state court judicial decision from which the forbidden de facto appeal is brought.'" *Bell*, 709 F.3d at 897 (quoting *Noel*, 341 F.3d at 1158).  This "inextricably intertwined" language, however, "is not a test to determine whether a claim is a de facto appeal, but is rather a second and distinct step in the *Rooker-Feldman* analysis." *Id.*  "Should the action not contain a forbidden de facto appeal, the *Rooker-Feldman* inquiry ends." *Id.*

In the Board defendants' pending motion, they argue that the allegations of plaintiffs' FAC that they were deprived of evidentiary hearings and the right to cross-examination of witnesses prior to the Board's adoption of the emergency regulations and issuance of the curtailment orders were already fully addressed by the California Court of Appeal in *Stanford Vina Ranch Irrigation Company v. State*, 50 Cal. App. 5th 976 (2020).  (Doc. No. 31-1 at 12.) Specifically, the Board defendants argue that plaintiff Stanford Vina challenged "nearly identical"

18

1  regulations that were adopted during the 2014–2015 drought in *Stanford Vina Ranch Irrigation*

2  *Company* and the California Court of Appeal in that case concluded that due process did not

3  require the Board to hold evidentiary hearings before promulgating emergency drought

4  regulations.  (*Id.*) (citing *Stanford Vina Ranch Irrigation Co.*, 50 Cal. App. 5th at 1003–04).  By

5  challenging the Board's adoption of emergency regulations and issuance of the curtailment orders

6  in this action, the Board defendants argue that plaintiffs "essentially ask this court to reverse the

7  California court of appeal" and that the claims asserted in this action "are inextricably intertwined

8  with" *Stanford Vina Ranch Irrigation Company*.  (*Id.* at 13–14.)

9         In opposition, plaintiffs argue that the *Rooker-Feldman* doctrine is inapplicable because

10  the plaintiffs "are not complaining of injuries caused by the state court judgment in *Stanford Vina*

11  *Ranch Irrigation Company*."  (Doc. No. 32 at 8–9.)  Rather, plaintiffs contend that they are

12  challenging the Board defendants' adoption and implementation of emergency regulations and

13  curtailment orders on Mill Creek and Deer Creek occurring in 2021, which are "separate and

14  distinct" from the 2014–2015 emergency regulations that were the subject of the state appellate

15  court decision in *Stanford Vina Ranch Irrigation Company*—indeed, they note that the 2021

16  regulations were adopted six years later and cover fewer watersheds.  (*Id.*)

17         In reply, plaintiffs reiterate that this case is "inextricably intertwined" with *Stanford Vina*

18  *Ranch Irrigation Company* and that this court should focus on the relief sought by plaintiff Vina,

19  which shows that "the present suit collaterally attacks the state appellate court's interpretation of

20  Article X, section 2 of the California Constitution in the context of due process requirements."

21  (Doc. No. 34 at 5.)

22         Here, the court need only address whether plaintiff Stanford Vina is pursuing a de facto

23  appeal from the California Court of Appeal's judgment in *Stanford Vina Ranch Irrigation*

24  /////

25  /////

26  /////

27  /////

28  /////

*Company*.[10]  The court concludes that it is not.  To begin with, plaintiffs' FAC does not even mention the state appellate court's decision in *Stanford Vina Ranch Irrigation Company*; rather, it alleges that the Board "adopted nearly identical *but also distinct* emergency regulations curtailing nearly all off-stream diversions on Mill, Deer, and Antelope Creeks" in 2014–2015.  (Doc. No. 16 at ¶ 68) (emphasis added); (*see also id.* at ¶ 70) (alleging that "[t]he record preceding the 2021 emergency regulations and orders is far different from the 2014 and 2015 regulations and orders").  Notably, plaintiff Stanford Vina does not allege that the California Court of Appeal judgment issued in *Stanford Vina Ranch Irrigation Company* regarding those 2014–2015 regulations or curtailment orders harmed it in some way or that it is seeking relief from the judgment in that case.  Nor does it assert that the state appellate court erred as a matter of law in that earlier case.  Instead, plaintiff Stanford Vina challenges the Board defendants' adoption and implementation of the emergency regulations and curtailment orders in 2021 and contends that those actions are unconstitutional.  (Doc. No. 16 at ¶¶ 59–60, 65, 131–40.)  The specific relief plaintiff Stanford Vina seeks is an injunction prospectively prohibiting defendants from adopting, readopting, and enforcing the emergency regulations and curtailment orders without a due process hearing, and a declaration that defendants' failure to provide due process in conjunction with those actions is unconstitutional.  (*Id.* at 57.)  As such, the legal wrong alleged in this action by plaintiff Stanford Vina is one purportedly perpetrated by defendants, not the California Court of

---

[10]  As an initial matter, plaintiffs correctly point out that the *Rooker-Feldman* doctrine could not apply to plaintiffs Los Molinos and Peyton because they were not parties—nor appear to have had any involvement—in *Stanford Vina Ranch Irrigation Company*, and defendants do not contest this point in their reply brief.  (Doc. Nos. 32 at 8; 34 at 5); *see Lance v. Dennis*, 546 U.S. 459, 466 (2006) (recognizing that "*Rooker-Feldman* [is] inapplicable where the party against whom the doctrine is invoked was not a party to the underlying state-court proceeding" and rejecting the argument that a third-party who is in privity with the losing party from the state court proceeding can be barred under *Rooker-Feldman*); *Bennett v. Yoshina*, 140 F.3d 1218, 1223–24 (9th Cir. 1998) ("Since the *Rooker-Feldman* doctrine applies only when the federal plaintiff was a party to the state case and is challenging an adverse decision by the state court, it follows that mere participation in the state case as amici does not invoke the *Rooker-Feldman* bar.") (internal citation omitted).  Thus, the court need only determine whether plaintiff Stanford Vina is barred from bringing its suit under the *Rooker-Feldman* doctrine because it is the only plaintiff that was a party in the *Stanford Vina Ranch Irrigation Company* case before the California Court of Appeal.

1    Appeal. *See Bell*, 709 F.3d at 897 (finding the *Rooker-Feldman* doctrine inapplicable where the

2    plaintiffs "sought relief designed to remedy injuries suffered from a state court judgment" but

3    "did not allege before the court that the state court committed legal error, nor did they seek relief

4    from the state court judgment itself"); *id.* ("Without a direct challenge to a state court's factual or

5    legal conclusion, Plaintiffs' suit is not a forbidden de facto appeal, and *Rooker-Feldman* is

6    inapplicable.").

7        Moreover, the Board defendants also do not articulate how plaintiff Stanford Vina's

8    success in this action would somehow reverse the state appellate court's decision in *Stanford Vina*

9    *Ranch Irrigation Company*.  To the contrary, the allegations of the FAC indicate that plaintiff

10   Stanford Vina's procedural due process claims are independent legal claims that do not challenge

11   a state court judgment, even if those claims might touch upon a legal conclusion reached by the

12   state appellate court in *Stanford Vina Ranch Irrigation Company*.[11]  *See Hooper*, 56 F.4th at 624

13   ("*Rooker-Feldman* does not preclude a plaintiff from bringing an independent claim that, though

14   similar or even identical to issues aired in state court, was not the subject of a previous judgment

15   by the state court. . . . [A] statute or rule governing the [state court's] decision may be challenged

16   in a federal action.") (internal citations and quotation marks omitted).

17       For these reasons the court concludes defendants have not shown that plaintiffs are

18   presenting a de facto appeal of a state court judgment based on the allegations in the FAC.

19   Accordingly, the Board defendants' motion to dismiss plaintiffs' procedural due process claims as

20   barred by the *Rooker-Feldman* doctrine will be denied.

21   /////

22   /////

23   _____

24   [11]  In *Stanford Vina Ranch Irrigation Company*, the state appellate court analyzed whether the
     promulgation of the 2014–2015 emergency regulations and curtailment orders were within the
25   Board's authority under California law.  *See* 50 Cal. App. 5th at 1004–05, 1008.  Although the
     court briefly mentioned due process in passing when concluding that the Board was not required
26   to hold an evidentiary hearing to promulgate the 2015 emergency regulations because doing so
     was a legislative function under state law, the court did not specify if it was referring to federal or
27   state procedural due process, and the California case cited by the state appellate court in support
     of its conclusion did not address federal or state procedural due process at all.  *Id.* at 1003–04
28   (citing *Cal. Trout, Inc. v. State Water Res. Control Bd.*, 207 Cal. App. 3d 585 (1989)).

1          b.      *Procedural Due Process*

2          Plaintiffs allege in their FAC that they were denied procedural due process under federal

3   law because they did not receive individualized evidentiary hearings before the Board issued

4   emergency regulations and curtailment orders.  (Doc. No. 16 at ¶¶ 130–46.)  In their pending

5   motion, the Board defendants argue that plaintiffs have failed to state a cognizable due process

6   claim because the promulgation of the emergency regulations and curtailment orders, as alleged,

7   are legislative acts and plaintiffs' own allegations show that the process owed in connection with

8   such acts was provided to plaintiffs.  (Doc. No. 31-1 at 14–15.)

9          Whether plaintiffs were accorded procedural due process when the emergency regulations

10  and curtailment orders were enacted by the Board "depends on the nature of the decision leading

11  to" the Board's emergency regulations and curtailments orders.  *See Hotel & Motel Ass'n of*

12  *Oakland v. City of Oakland*, 344 F.3d 959, 968–69 (9th Cir. 2003).  "Ordinarily, due process of

13  law requires an opportunity for some kind of hearing prior to the deprivation of a significant

14  property interest."  *Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1060 (9th Cir. 2012)

15  (quoting *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 19 (1978)) (internal quotation

16  marks omitted).  "However, [w]hen the action complained of is legislative in nature, due process

17  is satisfied when the legislative body performs its responsibilities in the normal manner

18  prescribed by law."  *Halverson v. Skagit Cnty.*, 42 F.3d 1257, 1260 (9th Cir. 1994) (citation and

19  internal quotation marks omitted).  As the Ninth Circuit has explained:

20              In seeking to define when a particular governmental action is
                legislative in nature we have eschewed the formalistic distinctions
21              between legislative and adjudicatory or administrative government
                actions and instead focused on the character of the action, rather
22              than its label . . . .  In doing so, our cases have determined also that
                governmental decisions which affect large areas and are not
23              directed at one or a few individuals do not give rise to the
                constitutional procedural due process requirements of individual
24              notice and hearing; general notice as provided by law is sufficient.

25  *Id.* 1260–61 (9th Cir. 1994) (internal quotation marks and citations omitted); *Hotel & Motel Ass'n*

26  *of Oakland*, 344 F.3d at 969.

27  /////

28  /////

22

Here, plaintiffs allege that the emergency regulations and curtailment orders affected all 22 water rights holders on Mill Creek and Deer Creek.[12]  (Doc. No. 16 at ¶¶ 78, 136.)  The text of the emergency regulations and curtailment orders are consistent with plaintiffs' allegation that they affected "[a]ll water right holders" in the Deer and Mill creek watersheds, which cover approximately 239 and 134 square miles, respectively, and run for 60 miles each before their confluences with the Sacramento River.  (Doc. No. 31-2 at 30–31, 45, 59); Cal. Code Regs. tit. 23, § 876.5(c)(1)–(2).  The allegations of plaintiffs' FAC indicate that the Board's promulgation of the emergency regulations and issuance of curtailment orders were legislative acts because those regulations and orders affected large areas (i.e., the entirety of the Deer Creek and Mill Creek watersheds) and were directed at all water right holders in both watersheds, as opposed to one or only a few water rights holders.  *See Hotel & Motel Ass'n of Oakland*, 344 F.3d at 969–70 (finding that the plaintiffs failed to plausibly allege a procedural due process claim against the city's promulgation of an ordinance affecting all hotels, even though the ordinance was motivated by a subcategory of bad actors, because the ordinance did not "specifically target[] a single individual's property for a zoning change" nor "exceptionally affect[] . . . [the plaintiffs] on an individual basis"); *see also Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1056–1060 & n.10 (9th Cir. 2012) (holding that an emergency ordinance imposing a moratorium on shoreline development that was enacted without a public hearing did not run afoul of procedural due process because it "applied generally to all owners of shoreline property on Bainbridge Island"); *Flint v. Cnty. of Kauai*, 521 F. Supp. 3d 978, 994 (D. Haw. 2021) (finding that a temporary emergency rule enacted to limit access to an area on the island of Kauai to allow road repairs following "devastating flooding" was legislative in character because it "affected the 'entire class' of [transient vacation rental] owners in the disaster area—approximately 80 properties" and thus did not violate procedural due process).  Importantly, plaintiffs have not plausibly alleged in

---

[12]  Plaintiffs' allegation that 22 water rights holders were affected appears consistent with the curtailment orders themselves, which the court has judicially noticed.  Although the Board defendants contend in their pending motion that 65 water rights holders were affected, the curtailment orders indicate that there are actually 65 *claims* on water rights on Mill Creek and Deer Creek, though certain water rights holders have more than one claim, and that in total, there are 22 water rights holders.  (*See* Doc. No. 31-2 at 45, 59.)

their FAC—beyond conclusory claims that their rights were impaired—how the temporary emergency regulations and curtailment orders "exceptionally affected [them] . . . on an individual basis" when the limitations on water diversion were imposed on all water rights holders in the Mill Creek and Deer Creek watersheds.  (*See* Doc. No. 16 at ¶ 67); *cf. Harris v. Cnty. of Riverside*, 904 F.2d 497, 502 (9th Cir. 1990) (finding that a due process violation occurred because within the county's general plan amendment process the county "specifically targeted Harris' property for a zoning change after notice had been published" and the result of the change in zoning effectively put the plaintiff out of business, absent paying "a substantial nonrefundable fee"); *see also Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 542 (1978) (explaining that "in a rulemaking proceeding when an agency is making a quasi-judicial determination" additional procedures may be required in some circumstances when "very small number of persons are exceptionally affected, in each case upon individual grounds") (internal quotation marks omitted).  Finally, plaintiffs have not presented any persuasive legal authority supporting their argument that they have plausibly alleged that the Board acts were not legislative in nature.  *Cf. Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915) ("Where a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption.").

Because the allegations of plaintiffs' FAC indicate that the emergency regulations and curtailment orders were legislative in nature, "due process is satisfied when the legislative body performs its responsibilities in the normal manner prescribed by law."  *Halverson v. Skagit Cnty.*, 42 F.3d at 1260.  In this regard, plaintiffs allege in their FAC that they received notice of the Board's promulgation and issuance of the emergency regulations and curtailment orders, "participated orally and in writing in the meetings at which defendants voted to adopt the emergency regulations and curtailment orders," and after adoption, plaintiffs "sought reconsideration of the curtailment order[s]."  (Doc. No. 16 at ¶¶ 13, 54.)  Given these allegations, plaintiffs have not plausibly alleged a cognizable federal procedural due process claim.  *See Free Spirit Organics, NAC v. San Joaquin Cnty. Bd. of Supervisors*, No. 2:17-cv-02271-KJM-JDP, 2022 WL 902834, at *7 (E.D. Cal. Mar. 25, 2022) (finding that the plaintiffs had failed to

1   plausibly allege a procedural due process claim where "plaintiffs do not allege the County

2   departed from its normal procedure for enacting an emergency moratorium" ordinance

3   temporarily limiting the production of industrial hemp).

4           Accordingly, the motion to dismiss plaintiffs' federal procedural due process claims

5   brought on behalf of the Board defendants' will be granted, with leave to amend.  In this regard,

6   the court is also skeptical that plaintiffs can allege sufficient facts in support of a cognizable claim

7   that the Board's actions were not legislative in nature or that the requisite process due was not

8   provided to plaintiffs.  Nevertheless, plaintiffs will be granted one opportunity to amend their

9   allegations in support of their federal due process claims should they wish to continue to pursue

10  that claim.  *See Nat'l Council of La Raza*, 800 F.3d at 1041.

11  **B.      The Department Defendants' Motion to Dismiss**

12          The court will first address the arguments advanced by the Department defendants that

13  several of plaintiff Stanford Vina's claims should be dismissed as barred by the Eleventh

14  Amendment.  The court will then consider the Department defendants' argument that plaintiffs

15  have failed to state cognizable ESA and procedural due process claims.  Finally, the court will

16  consider the Department defendants' arguments urging dismissal of plaintiff Stanford Vina's

17  claim for declaratory relief.

18          1.      Eleventh Amendment – State Sovereign Immunity

19          In the Department defendants' pending motion, they seek dismissal of all claims asserted

20  against the Department, along with claims 11 and 14 asserted against defendant Bonham, as being

21  barred by the Eleventh Amendment.

22                  a.      *All Claims Asserted Against the Department (Claims 10–14)*

23          The Department defendants move to dismiss all claims asserted against the Department,

24  contending that they are barred by state sovereign immunity under the Eleventh Amendment and

25  that these claims cannot fall within the *Ex parte Young* exception to state sovereign immunity

26  because they are asserted against a state agency rather than a state official.  (Doc. No. 39-1 at 11–

27  12.)  In its opposition, plaintiff Stanford Vina argues that its ESA claim against the Department is

28  not barred by state sovereign immunity but does not appear to contest that the other three claims

asserted against the Department are so barred.  (Doc. No. 40 at 9–10.)  Plaintiff Stanford Vina further argues in its opposition that the Department can be sued under the ESA because Congress abrogated state sovereign immunity for such claims and the Department has impliedly consented to be sued under the ESA by "operating, maintaining, and repairing fish ladders and fish screens on Deer Creek."  (*Id.* at 10–11) (citing *Palila v. Haw. Dep't of Land & Nat. Res.*, 471 F. Supp. 985, 997 (D. Haw. 1979), *aff'd*, 639 F.2d 495 (9th Cir. 1981)).  In reply, and as preemptively addressed in their motion, the Department defendants contend that the decision in *Palila* must not be relied upon because the district court in that case relied on Supreme Court precedent that has now been expressly overruled.  (Doc. Nos. 39-1 at 12–13; 42 at 8.)

Having reviewed the decision in *Palila* closely, it is apparent that the key precedent underpinning that district court's Eleventh Amendment holding—and upon which plaintiff Stanford Vina relies—is the Supreme Court's decision in *Parden v. Terminal Railyard of Alabama State Docks Department*, 377 U.S. 184, 190 (1964), which has indeed been expressly overruled.  *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 680 (1999) ("*Parden* stands as an anomaly in the jurisprudence of sovereign immunity, and indeed in the jurisprudence of constitutional law. . . . Whatever may remain of our decision in *Parden* is expressly overruled."); *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 478 (1987) (holding that there was "no doubt that *Parden*'s discussion of congressional intent to negate Eleventh Amendment immunity is no longer good law" and to the extent *Parden* "is inconsistent with the requirement that an abrogation of Eleventh Amendment immunity by Congress must be expressed in unmistakably clear language, it is overruled").  Because plaintiff Stanford Vina's argument—that Congress abrogated state sovereign immunity for the ESA and that the Department impliedly consented to suit under the ESA—is based solely on the overruled reasoning underpinning the decision in *Palila*, the court finds Stanford Vina's argument in this regard is unsupported and unavailing.  *See Coll. Sav. Bank*, 527 U.S. at 678 (explaining that a state's waiver of its sovereign immunity will be found only "where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction").  Plaintiff Stanford Vina also does not identify any allegations in the

1    FAC suggesting that the Department expressly waived state sovereign immunity.  Moreover, in a

2    similar case in which ESA claims have been brought against several California officials and

3    agencies, the Ninth Circuit held that "two state agencies [were] . . . immune from suit because

4    they are state entities, not individual state officers" but that "the Eleventh Amendment [did] not

5    bar suit against the Director of the California Department of Fish & Game."  *Nat'l Audubon*

6    *Soc'y, Inc. v. Davis*, 307 F.3d 835, 847 (9th Cir. 2002).

7            Accordingly, the Department defendants' motion to dismiss all claims asserted against the

8    Department will be granted.  Plaintiff Stanford Vina will not be granted leave to amend to assert

9    claims against the Department because amendment of such claims would be futile.  *See*

10   *Pennhurst*, 465 U.S. at 100 ("It is clear . . . that in the absence of consent a suit in which the State

11   or one of its agencies or departments is named as the defendant is proscribed by the Eleventh

12   Amendment.").

13                  b.      *Federal Takings Claims Against Defendant Bonham (Claim 11)*

14           Plaintiff Stanford Vina asserts a § 1983 claim against defendant Bonham (the executive

15   director of the Department) for taking real property without just compensations in violation of the

16   Fifth and Fourteenth Amendments based on the alleged "abandonment of operation, maintenance,

17   and repair obligations of the fish ladders and screens" by the Department defendants as

18   constituting "a taking of [plaintiff Stanford Vina's] property for public purposes and to implement

19   a public project." (Doc. No. 16 at ¶¶ 180–82.)  The Department defendants move to dismiss this

20   claim against defendant Bonham as barred by the Eleventh Amendment's state sovereign

21   immunity.  (Doc. No. 39-1 at 17.)

22           In their respective briefing, plaintiff Stanford Vina and the Department defendants dispute

23   whether the *Ex parte Young* exception to state sovereign immunity applies to plaintiff Stanford

24   Vina's takings claim, and the parties have essentially repeated the legal arguments nearly

25   verbatim that they advanced in their briefing on the Board Defendants' motion.  (*See* Doc. Nos.

26   39-1 at 17–18; 40 at 15–16; 42 at 12–13.)  In addressing that motion above, the court has already

27   analyzed the applicability of the *Ex parte Young* exception to takings claims brought against

28   individual state officials.  That same analysis applies to plaintiff Stanford Vina's takings claim

asserted against defendant Bonham.  In short, the Eleventh Amendment bars inverse condemnation actions brought under the Fifth Amendment's Taking Clause in federal court against state officials in their official capacities even if the claim is construed "as one seeking injunctive relief against state officers to force them to adhere to the Constitution, as in *Ex parte Young*." *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 956 (9th Cir. 2008); *see also Jachetta v. United States*, 653 F.3d 898, 909–10 (9th Cir. 2011); *74 Pinehurst LLC v. New York*, 59 F.4th 557, 570 & n.7 (2d Cir. 2023).  Although plaintiff Stanford Vina purportedly seeks prospective injunctive relief as stated in the FAC, it has not alleged facts indicating that it would be prevented from bringing suit in state court to recover just compensation for any alleged future takings caused by the Department's alleged abandonment of fish ladders and screens on its property.  As a result, plaintiff Stanford Vina cannot seek injunctive or declaratory relief for its asserted violation of the takings clause, and in turn, it cannot satisfy the requirements of the *Ex parte Young* exception for purposes of bringing suit against defendant Bonham in light of the availability of an adequate legal remedy under state law.  *See Laborers' Int'l Union of N. Am., Loc. 860 v. Neff*, 29 F.4th 325, 334–35 (6th Cir. 2022) (finding state sovereign immunity barred takings claim against state official where allegations did not indicate that legal remedy available under state law was not adequate); *EEE Mins., LLC v. State of N. Dakota*, __ F.4d __, 2023 WL 5600296, at *5 (8th Cir. Aug. 30, 2023) (same); *Culinary Studios, Inc. v. Newsom*, 517 F. Supp. 3d 1042, 1065 (E.D. Cal. 2021) (same).

  For these reasons, the court concludes that plaintiff Stanford Vina's takings' claim is barred by the Eleventh Amendment's state sovereign immunity.  Accordingly, the court will grant the Department defendants' motion to dismiss this claim brought against defendant Bonham, with leave to amend.

    c. *State Law Nuisance Claim Against Defendant Bonham (Claim 14)*

  Plaintiff Stanford Vina also asserts a state law nuisance claim against defendant Bonham. (Doc. No. 16 at ¶¶ 147–62.)  The Department defendants argue that this claim is barred under the Eleventh Amendment pursuant to *Pennhurst*.  (Doc. No. 39-1 at 20.)  For the same reasons that the court has found plaintiffs' state law claims asserted against the Board defendants to be barred

1     under the Eleventh Amendment, the court likewise concludes that this state law nuisance claim—

2     asserted against defendant Bonham in his official capacity as the Department's executive

3     director—is also barred. *See Spoklie v. Montana*, 411 F.3d 1051, 1060 (9th Cir. 2005) (finding

4     state law claim asserted against the state was barred under the Eleventh Amendment as explained

5     in *Pennhurst*). Accordingly, the Department defendants' motion to dismiss plaintiff Stanford

6     Vina's state law nuisance claim asserted against defendant Bonham will be dismissed without

7     leave to amend because amendment of that claim would be futile. *See Bradley-Aboyade v.*

8     *Crozier*, No. 2:19-cv-01098-TLN-AC, 2020 WL 4475088, at *8 (E.D. Cal. Aug. 4, 2020)

9     (dismissing state law claim asserted against the defendant state official in his official capacity

10    without leave to amend as barred by the Eleventh Amendment); *Ransom v. Lee*, No. 14-cv-

11    00600-DSF-KK, 2017 WL 10525951, at *14, *16 (C.D. Cal. Apr. 20, 2017) (same), *report and*

12    *recommendation adopted*, 2017 WL 10510170 (C.D. Cal. June 27, 2017).

13          2.      Endangered Species Act § 9 Claim Against Defendant Bonham (Claim 10)

14          Plaintiff Stanford Vina next asserts a claim against defendant Bonham under § 9 of the

15    ESA alleging that the Department defendants abandoned fish screens and ladders that they have

16    historically maintained at plaintiff Stanford Vina's dam on Deer Creek. (Doc. No. 16 at ¶¶ 90–

17    92.) This abandonment has allegedly allowed debris to build up and block the fish ladder; the

18    buildup has also allegedly caused a take of threatened salmon and steelhead and continues to

19    present an "imminent risk of mortality" to these threatened species according to plaintiff Stanford

20    Vina. (*Id.* at ¶¶ 91–92.) In moving to dismiss this claim against defendant Bonham, the

21    Department defendants argue both that plaintiff Stanford Vina has failed to allege that defendant

22    Bonham had a legal duty to operate, maintain, and repair the fish ladders and screens and that

23    plaintiff Stanford Vina has failed to plausibly allege that there is an ongoing or imminent

24    violation of § 9 of the ESA. (Doc. No. 39-1 at 13.)

25          a.     *ESA Statutory Scheme*

26          Congress enacted the ESA "to provide a means whereby the ecosystems upon which

27    endangered species and threatened species depend may be conserved" and "to provide a program

28    for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531

(a)(3).  The ESA "contains a variety of protections designed to save from extinction species that the Secretary of the Interior designates as endangered or threatened."  *Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687, 690 (1995).  One such protection is § 9 of the ESA.  *See id.*  Section 9 of the ESA, along with its implementing regulations, makes it unlawful for "any person" to "take" any threatened or endangered species of fish or wildlife, or for any person "to attempt to commit, solicit another person to commit, or cause to be committed" any such "take."  16 U.S.C. § 1538(a)(1)(B), (g); 50 C.F.R. §§ 17.21, 17.31; *see also Ctr. for Biological Diversity v. Bureau of Land Mgmt.*, 833 F.3d 1136, 1141–42 (9th Cir. 2016) (describing the ESA's statutory scheme).

"Take" means to "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct."  16 U.S.C. § 1532(19).  "Harm" means "an act which actually kills or injures wildlife," which may include "significant habitat modification or degradation where it actually kills or injures wildlife by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering."  50 C.F.R. § 17.3; *see also Marbled Murrelet v. Babbitt*, 83 F.3d 1060, 1067 (9th Cir. 1996) ("[A] habitat modification which significantly impairs the breeding and sheltering of a protected species amounts to 'harm' under the ESA.").  "Harass" "means an intentional or negligent act or omission which creates the likelihood of injury to wildlife by annoying it to such an extent as to significantly disrupt normal behavioral patterns which include, but are not limited to, breeding, feeding, or sheltering."  50 C.F.R. § 17.3.  The "take" prohibition of the ESA applies to all persons, including any officer, employee, agent, department, or instrumentality of any state.  16 U.S.C. § 1532(13).  The species allegedly at issue in this action, the Central Valley Spring Run Chinook Salmon and the Central Valley Steelhead, are listed as threatened species.  (Doc. No. 16 at ¶ 166); *see also* 50 C.F.R. § 17.11 (listing both species as threatened).  As threatened species, these salmon and steelhead are protected under § 9 of the ESA.  50 C.F.R. §§ 17.21(a), 17.31(a).

          b.     *Whether Plaintiff Stanford Vina Has Plausibly Alleged a § 9 Violation*

In their pending motion, the Department defendants first argue that plaintiff Stanford Vina's conclusory allegation that the Department is under a mandatory legal duty to operate,

30

1  maintain, and repair fish ladders and screens on Deer Creek is an insufficient basis upon which to

2  plausibly allege that defendant Bonham is subject to liability under § 9 of the ESA.  (Doc. No. 39-

3  1 at 13.)  In making this argument, Department defendants argue that Stanford Vina has not

4  identified any "legal document or provision to support the existence of such duty."  (*Id.* at 14.)  In

5  its opposition, Stanford Vina points to its allegation in the FAC that the Department has operated,

6  maintained, and repaired these fish ladders and screens for over 60 years and did so pursuant to

7  "written licenses, easements, and contractual agreements executed by [the Department], and

8  pursuant to California Fish and Game Code Section 6021, et se[q]" and references an

9  encroachment permit from 1958 to install and maintain a fish screen and ladder on Stanford

10  Vina's main diversion dam.  (Doc. Nos. 40 at 12–13; 16 at ¶¶ 87–89, 190–95.)  In reply, the

11  Department defendants correctly point out that California Fish and Game Code § 6021, which

12  only addresses fish screens, does not impose a mandatory obligation on the Department to

13  operate, maintain, or repair fish screens.  (Doc. No. 42 at 10.)  Indeed, § 6021 provides, in

14  relevant part, that the Department "*may* install, maintain, repair, and replace fish screens,

15  bypasses, or other devices to prevent the passage of fish through a conduit, when in the opinion of

16  the department such a screen or device is practical and necessary."  Cal. Fish & Game Code §

17  6021; *see also Dep't of Fish & Game v. Anderson-Cottonwood Irrigation Dist.*, 8 Cal. App. 4th

18  1554, 1566 (1992) (holding that the Department's duty under § 6021 "is plainly discretionary").

19      Notably, however, the Department defendants have failed to present any legal authority

20  for the proposition that plaintiff Stanford Vina must plausibly allege the existence of some legal

21  document obligating the Department to maintain the fish screens and ladders in order to state a

22  cognizable claim under § 9 of the ESA.[13]  *See ReOpen San Diego v. City of San Diego*, No. 22-

23  cv-208-GPC-BGS, 2022 WL 3371340, at *2 (S.D. Cal. Aug. 16, 2022) ("While a plaintiff must

24  plead sufficient factual allegations and present a plausible legal theory to *survive* a 12(b)(6)

25

26  [13]  Department defendants cite a single district court opinion for the proposition that "a plaintiff
   must allege the specific provisions in the contract creating the obligation the defendant is said to
27  have breached."  *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011).
   However, that district court decision involved a breach of contract claim brought under California
28  law and would appear to have little applicability to plaintiff Stanford Vina's ESA § 9 claim.

1   motion to dismiss, in bringing the motion, 'it is the defendant's burden to demonstrate that

2   plaintiff has failed to state a claim.'") (citation omitted).  Rather, to state a cognizable ESA § 9

3   claim, the challenged action or omission by the Department defendants need only be the

4   proximate cause of an alleged taking of a threatened species in order to constitute a prohibited

5   taking under § 9 of the ESA.  *See Cascadia Wildlands v. Kitzhaber*, 911 F. Supp. 2d 1075, 1084

6   (D. Or. 2012) (explaining that "[i]t is well accepted that proximate cause is an element of ESA

7   Section 9 claims") (collecting cases).  Under this standard, plaintiff Stanford Vina need only

8   allege that the imminent taking of a threatened species be "fairly traceable" to the Department

9   defendants' action (or inaction), not that the Department defendants have a legal obligation to act

10  pursuant to a written agreement.  *See id.* ("In the context of the ESA, proximate cause issues

11  entail determining whether the alleged injury—here, take of [the threatened species]—is fairly

12  traceable to the challenged action of Defendants.").

13       The Department defendants also argue both that plaintiff Stanford Vina has failed to

14  allege sufficient facts indicating that there is "an ongoing or imminent" § 9 violation and that

15  Stanford Vina's allegations "fail to rise above the speculative level" of harm to the salmon and

16  steelhead.  (Doc. No. 39-1 at 15.)  Specifically, the Department defendants contend that the

17  alleged buildup of debris "can" harm fish, which does "not establish that a take will result

18  because of [the Department's] alleged failure to operate, maintain, and repair" the fish screens

19  and ladders.  (*Id.* at 16.)  But plaintiff Stanford Vina has alleged facts regarding how the

20  Department's ongoing failure to maintain fish ladders has already led to the direct take of salmon

21  and steelhead in or around October 2021, and how a similar lapse in the Department's

22  maintenance in 2010 also led the death of 21 salmon.  (Doc. No. 16 at ¶¶ 88, 90–91.)

23  Specifically, plaintiff Stanford Vina alleges that a "fish counter camera apparatus" installed by

24  the Department at the fish ladder located at its dam has "caused debris to fill up and block the fish

25  ladder, leaving present fish unable to utilize the ladder for passage purposes."  (*Id.* at ¶ 90.)  The

26  Department defendants are allegedly aware of the ongoing blockage, including as a result of a site

27  visit to the blockage in October 2021, but the Department defendants allegedly "declined to take

28  action" to address the blockage despite acknowledging in a February 8, 2022 letter that their

1    operation and maintenance of the fish ladders and screens protects the fish in Deer Creek—a

2    letter that plaintiffs have attached as an exhibit to their FAC.  (*Id.* at ¶¶ 90, 168; Doc. No. 16-1.)

3            Although the Department defendants contend that past incidents cannot form the basis of a

4    claim under § 9 of the ESA, plaintiff Stanford Vina alleges that the Department's abandonment of

5    its fish ladders and screens is ongoing.  (Doc. No. 16 at ¶ 165) (alleging that "[t]his abandonment

6    of facilities and duties continues through the present"); (*id.* at ¶ 92) (alleging that "[t]his imminent

7    risk of mortality continues through the present so long as the [Department defendants] refuse to

8    fulfill repair and maintenance obligations").  Moreover, the allegations regarding the October

9    2021 blockage, when read in the light most favorable to plaintiff Stanford Vina as the court must

10   at this stage of the litigation, suggest that the blockage has not been cleared and the threat it poses

11   remains ongoing.  A reasonable inference can be drawn from the facts alleged that a continued

12   failure to maintain the fish screens and ladders represents a "definitive threat of future harm" as

13   opposed to a speculative one, *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803,

14   819 (9th Cir. 2018) (citation omitted), particularly in light of the allegations that previous failures

15   to clear debris from fish ladders (including the ongoing failure to do so) have directly led to the

16   taking of salmon and steelhead.  *See Nat. Res. Def. Council v. Norton*, No. 1:05-cv-01207-LJO-

17   EPG, 2016 WL 6135858, at *23–26 (E.D. Cal. Oct. 20, 2016) (finding the plaintiff had

18   sufficiently stated a § 9 ESA claim where the plaintiff alleged that the defendant's past diversion

19   of water led a federal government agency to lose control of water temperatures, which in turn, led

20   to the take of threatened salmon, and that similar diversions by the defendant were likely to

21   continue in the future "should drought conditions persist").

22           Accordingly, the Department defendants' motion to dismiss plaintiff Stanford Vina's § 9

23   ESA claim brought against defendant Bonham will be denied.

24   /////

25   /////

26   /////

27   /////

28   /////

1          3.       Federal Procedural Due Process Claim Against Defendant Bonham (Claim 12)

2          Plaintiff Stanford Vina also asserts a § 1983 claim against defendant Bonham for violation

3  of its procedural due process rights under the Fifth and Fourteenth Amendments.[14]  (Doc. No. 16

4  at 184–86.)  Specifically, plaintiff Stanford Vina alleges that defendant Bonham's "decision to

5  abandon operation, maintenance, and repair obligations of the fish ladders and screens . . . ha[s]

6  also interfered with and taken real property of [plaintiff Stanford Vina] without providing for a

7  due process evidentiary hearing."  (Doc. No. 16 at ¶ 185.)

8          Without citation to any legal authority, the Department defendants move to dismiss this

9  claim, contending that paragraph 185 of the FAC is insufficient to state a cognizable claim

10  because it is "impossible to determine from this conclusory paragraph what life, liberty, or

11  property interest [plaintiff Stanford Vina] alleges was taken without due process" or how the

12  Department defendants deprived them of that interest.  (Doc. No. 39-1 at 19–20.)  In opposition,

13  Stanford Vina points to its allegations that its water rights are private property which cannot be

14  infringed without due process of law and that the Department defendants' abandonment of the

15  fish ladder and fish screens physically prevented water from entering Stanford Vina's diversion

16  and canal.  (Doc. No. 40 at 19) (citing Doc. No. 16 at ¶¶ 105, 177, 185).  In reply, the Department

17  defendants argue that these allegations somehow reflect a "causation gap" because plaintiff

18  Stanford Vina does not actually allege that it was denied its right to divert water.  (Doc. No. 42 at

19  17.)  Further, the Department defendants argue that plaintiff Stanford Vina has not offered any

20  legal authority for the process it contends was due to it and was not provided.  (*Id.*)

21          The Department defendants' arguments in support of dismissing this claim lack citation to

22  any relevant legal authority.  Indeed, their motion is unsupported by any coherent argument

23  explaining how the allegations of the FAC fail to state a cognizable procedural due process claim.

24  Plaintiff Stanford Vina has alleged that it has a protected property interest in its water rights on

25  ───────────────

26  [14]  As noted above, to the extent plaintiff Stanford Vina's procedural due process claim asserted
against defendant Bonham, a state official, is brought under the Fifth Amendment, that aspect of

27  its procedural due process claim will be dismissed without leave to amend.  *See Bingue v.
Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008); *Clifton v. United States Dep't of Just.*, 615 F.

28  Supp. 3d 1185, 1202 (E.D. Cal. 2022).

1   Deer Creek, that the Department defendants' abandonment of operating, maintaining, and repair

2   fish screens have denied them of that protected property interest, and that no due process was

3   provided to it beforehand.  (Doc. No. 16 at ¶¶ 105, 114, 177, 184–86.)  For example, plaintiff

4   Stanford Vina alleges that the Department defendants' failure to operate motors related to the fish

5   screens that have "blocked water from entering [plaintiff Stanford Vina's] diversion and canal."

6   (*Id.* at ¶ 177.)  These allegations are sufficient to plausibly allege a claim for a procedural due

7   process violation.  *See Bateson v. Geisse*, 857 F.2d 1300, 1305 (9th Cir. 1988) (explaining that

8   procedural due process requires a protectible property interest and denial of that property right

9   without process due under the circumstances); *Parks v. Watson*, 716 F.2d 646, 656 (9th Cir.

10   1983) ("A property interest in a benefit protected by the due process clause results from a

11   'legitimate claim of entitlement' created and defined by an independent source, such as state or

12   federal law.") (citation omitted); *United States v. State Water Res. Control Bd.*, 182 Cal. App. 3d

13   82, 101 (1986) ("It is equally axiomatic that once rights to use water are acquired, they become

14   vested property rights. . . . [T]hey cannot be infringed by others or taken by governmental action

15   without due process . . . .").

16          The Department defendants' have failed to meet their burden as the movant to explain

17   how plaintiffs' allegations do not allege a plausible due process claim against defendant Bonham.

18   *See Miller v. Ford Motor Co.*, 620 F. Supp. 3d 1045, 1063 (E.D. Cal. 2022) ("On a motion to

19   dismiss, it is Defendant's burden to demonstrate Plaintiffs have failed to state a claim upon which

20   relief can be granted."); *Welchen v. Cnty. of Sacramento*, No. 2:16-cv-00185-TLN-KJN, 2016

21   WL 5930563, at *10 (E.D. Cal. Oct. 11, 2016) ("[S]ince it is Defendants' burden at the motion to

22   dismiss juncture, the Court cannot find that Defendants' motion is meritorious."); *Lesher v. City

23   of Anderson*, No. 2:21-cv-00386-WBS-DMC, 2021 WL 2682161, at *6 (E.D. Cal. June 30, 2021)

24   (denying motion to dismiss a particular claim where the defendants failed to conduct a relevant

25   analysis because the defendants "bear the burden of persuasion on their motion to dismiss and

26   have failed to carry it here").

27          Accordingly, the Department defendants' motion to dismiss plaintiff Stanford Vina's

28   procedural due process claim against defendant Bonham will be denied.

1      4.      Declaratory Relief Claim Against Defendant Bonham (Claim 13)

2             Lastly, plaintiff Stanford Vina asserts a declaratory relief claim against the Department

3      defendants seeking a court order declaring that their actions with respect to fish screens and

4      ladders on plaintiff Stanford Vina's main diversion dam have violated the ESA, the Takings

5      Clause of the Fifth and Fourteenth Amendments, and procedural due process guarantees under the

6      Fifth and Fourteenth Amendments.  (Doc. No. 16 at ¶¶ 187–97.)  The Department defendants

7      seek to dismiss this declaratory relief claim for lack of subject matter jurisdiction, arguing that

8      plaintiff Stanford Vina has failed to state any of its federal claims against defendant Bonham and

9      that as a result the court lacks subject matter jurisdiction over this declaratory relief claim.  (Doc.

10     No. 39-1 at 20.)

11            The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its

12     jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations

13     of any interested party seeking such declaration, whether or not further relief is or could be

14     sought."  28 U.S.C. § 2201(a).  "However, declaratory relief is a remedy, not a freestanding cause

15     of action, and Plaintiffs' action for declaratory relief survives only to the extent that Plaintiffs'

16     other causes of action state a claim for relief."  *Darling v. Green*, No. 12-cv-00362-PSG-CW,

17     2013 WL 12132058, at *9 (C.D. Cal. Apr. 18, 2013); *see also City of Reno v. Netflix, Inc.*, 52

18     F.4th 874, 878 (9th Cir. 2022) ("We agree with our sister circuits that have considered the issue

19     that the Declaratory Judgment Act does not provide an affirmative cause of action where none

20     otherwise exists."); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1097 (N.D. Cal. 2022)

21     ("The Declaratory Judgment Act does not provide an independent theory for recovery; if the

22     underlying claims are dismissed, . . . then there is no basis for any declaratory relief."); *Lorona v.

23     Ariz. Summit L. Sch., LLC*, 151 F. Supp. 3d 978, 997 (D. Ariz. 2015) ("The Second Amended

24     Complaint lists declaratory and injunctive relief as separate counts. . . . These are remedies, not

25     independent causes of action.").

26            Here, the court has determined that plaintiff Stanford Vina has plausibly alleged an ESA

27     claim and a procedural due process claim against defendant Bonham.  Accordingly, the court will

28     deny the Department defendants' motion to the extent it seeks dismissal of plaintiff Stanford

1   Vina's request for declaratory relief as to these two plausibly pled claims. The court will,

2   however, grant the Department defendants' motion to dismiss plaintiff Stanford Vina's request

3   for declaratory relief as to plaintiff Stanford Vina's takings claim.

**CONCLUSION**

5   For the reasons explained above:

6   1.   The Board defendants' request for judicial notice (Doc. No. 31-2) is granted;

7   2.   The Board defendants' motion to dismiss (Doc. No. 31) is granted as follows:

8   a.   Plaintiffs' first, second, third, and fourth claims are dismissed with leave to

9   amend;

10   b.   Plaintiffs' fifth, sixth, and seventh claims—to the extent those claims are

11   predicated on the Fifth Amendment—are dismissed without leave to

12   amend;

13   c.   Plaintiffs' fifth, sixth, and seventh claims—to the extent those claims are

14   predicated on the Fourteenth Amendment—are dismissed with leave to

15   amend; and

16   d.   Plaintiffs' eighth and ninth claims are dismissed without leave to amend;

17   3.   The Department defendants' motion to dismiss (Doc. No. 39) is granted in part and

18   denied in part as follows:

19   a.   Plaintiff Stanford Vina's tenth, eleventh, twelfth, thirteenth, and fourteenth

20   claims brought against defendant California Department of Fish and

21   Wildlife are dismissed without leave to amend;

22   b.   Plaintiff Stanford Vina's eleventh claim brought against defendant

23   Charlton Bonham is dismissed with leave to amend;

24   c.   Plaintiff Stanford Vina's thirteenth claim brought against defendant

25   Charlton Bonham—to the extent that claim seeks declaratory relief for

26   plaintiff Stanford Vina's eleventh claim—is dismissed;

27   d.   The Department defendants' motion to dismiss plaintiff Stanford Vina's

28   tenth and twelfth claims brought against defendant Charlton Bonham is

1    denied;

2    e.    The Department defendants' motion to dismiss plaintiff Stanford Vina's

3          thirteenth claim brought against defendant Charlton Bonham—to the extent

4          that claim seeks declaratory relief for plaintiff Stanford Vina's tenth and

5          twelfth claims—is denied; and

6    f.    Plaintiff Stanford Vina's fourteenth claim brought against defendant

7          Charlton Bonham is dismissed without leave to amend;

8    4.    Within twenty-one (21) days from the date of entry of this order, plaintiffs shall

9          file either a second amended complaint, or a notice of their intent not to file a

10         second amended complaint and to proceed only on the claims found to be

11         cognizable in this order;

12   5.    Consistent with this court's order adopting the parties' stipulation (Doc. No. 56),

13         plaintiffs may assert "challenges to the 2022 Regulations, Resolution, and/or any

14         2022 Curtailment Orders" in any second amended complaint that plaintiffs elect to

15         file (*id.* at 2);

16   6.    Because all of the claims brought against defendant California Department of Fish

17         and Wildlife have been dismissed without leave to amend, defendant California

18         Department of Fish and Wildlife is hereby terminated as a named defendant in this

19         action; and

20   7.    The Clerk of the Court is directed to update the docket to reflect that defendant

21         California Department of Fish and Wildlife has been terminated as a named

22         defendant from this action.

23   IT IS SO ORDERED.

24   Dated:   **September 28, 2023**

25                                              DALE A. DROZD
                                                UNITED STATES DISTRICT JUDGE
26

27

28