1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  LOS MOLINOS MUTUAL WATER COMPANY, et al., | No.  2:21-cv-01961-DAD-DMC |
| 12 | |
| 13              Plaintiffs, | ORDER GRANTING PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE AND |
| 14       v. | GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO |
| 15  ERIK EKDAHL, et al., | DISMISS CERTAIN OF PLAINTIFFS' CLAIMS |
| 16              Defendants. | (Doc. Nos. 63, 67) |
| 17 | |
| 18 | |

19          This matter is before the court on the motion to dismiss filed by defendants Erik Ekdahl,

20 Eileen Sobeck, E. Joaquin Esquivel, Dorene D'Adamo, Sean Maguire, Laurel Firestone, and

21 Nichole Morgan (collectively, "the Board defendants"), and by defendant Charlton Bonham, on

22 November 1, 2023.  (Doc. No. 63.)  The pending motion was taken under submission on

23 November 13, 2023.  (Doc. No. 65.)  For the reasons explained below, the pending motion to

24 dismiss will be granted in part and denied in part.  To the extent the pending motion to dismiss is

25 granted, plaintiffs will not be granted further leave to amend.

26                                        **BACKGROUND**

27          On October 18, 2023, plaintiffs Los Molinos Mutual Water Company ("Los Molinos"),

28 Peyton Pacific, LLC ("Peyton"), and Stanford Vina Ranch Irrigation Company ("Stanford Vina")

filed their operative second amended complaint ("SAC") challenging emergency regulations and water curtailment orders promulgated by the California State Water Resources Control Board ("Board") in response to extreme drought conditions occurring in 2021 and 2022.  (Doc. No. 62.) Plaintiffs did not name the Board as a defendant but rather brought this lawsuit against the Board defendants in their official capacities as members of the Board and staff employed by the Board.[1] (*Id.* at 1.)  In addition, plaintiff Stanford Vina is asserting claims against defendant Bonham, the executive director of the California Department of Fish and Wildlife ("the Department"), for allegedly abandoning fish ladders and screens intended to protect threatened Central Valley Spring Run Chinook Salmon ("salmon") and California Central Valley Steelhead ("steelhead"). (*Id.* at ¶¶ 188–204.)  Plaintiff Stanford Vina is also asserting a claim against the Board defendants for violating the Endangered Species Act.  (*Id.* at ¶¶ 205–08.)  Plaintiffs allege as follows in their SAC.

Plaintiffs and their shareholders own land in the vicinity of Mill Creek and Deer Creek in Tehama County, California, and hold and administer water rights appurtenant to their land holdings.  (*Id.* at ¶¶ 6–8.)  Specifically, plaintiffs possess "adjudicated water rights" that permit them to divert water from Mill Creek (Los Molinos and Peyton) and Deer Creek (Stanford Vina) that is used for approximately 11,000 acres of irrigated land, including "for permanent plantings, including orchards, and for irrigated pasture, stock watering, and similar beneficial uses."  (*Id.*) Plaintiffs Los Molinos and Stanford Vina have also invested in water-related infrastructure to divert and distribute water for their shareholders' use.  (*Id.* at ¶¶ 6, 8.)

On April 21, 2021, Governor Gavin Newsom issued a proclamation declaring a drought state of emergency in California and directed state agencies to take certain actions in response to the drought.  (*Id.* at ¶ 46.)  On May 10, 2021, Governor Newsom issued another proclamation related to the drought emergency which directed the Board and the Department to work with

---

[1]  The Board defendants are:  Erik Ekdahl, the deputy director of the division of water rights at the Board; Eileen Sobeck, the executive director of the Board; E. Joaquin Esquivel, the chair of the Board; Dorene D'Adamo, the vice chair of the Board; and Sean Maguire, Laurel Firestone, and Nichole Morgan, members of the Board.  (Doc. No. 16 at ¶ 9.)

water users and other parties on voluntary measures to implement actions needed to protect salmon, steelhead, and other native fishes.  (*Id.* at ¶ 47.)

Meanwhile, on or about May 5, 2021, representatives from the Department, the Board, and the National Marine Fisheries Service ("NMFS") invited plaintiffs Stanford Vina and Los Molinos to discuss the 2021 water conditions and fish passage in Deer Creek and Mill Creek.  (*Id.* at ¶ 33.)  Plaintiffs allege that during this meeting, plaintiffs Stanford Vina and Los Molinos were given "an ultimatum":  They submit a proposal to ensure fish passage in 2021, or the Board would adopt and impose emergency regulations that would curtail plaintiffs' water rights.  (*Id.*)  In response, plaintiffs Stanford Vina and Los Molinos submitted proposals for implementing "multi-benefit channel restoration projects" as well as "fishery protection proposals," which included a request for compensation for water transferred for instream use.  (*Id.* at ¶ 34.)  The Board, the Department, and NMFS allegedly rejected these proposals explaining that they did not have authority to authorize the measures that plaintiffs had proposed.  (*Id.* at ¶ 35.)  Despite rejecting these proposals from plaintiffs Los Molinos and Stanford Vina, "water users on Mill [Creek] and Deer [Creek] did coordinate with [the Department] and NMFS to voluntarily implement pulse flows in the spring of 2021 for benefit to the fishery, while minimizing impacts to agricultural beneficial uses."  (*Id.* at ¶ 37.)  The 2021 spring salmon run that followed these voluntary measures was allegedly "very large" and "excellent."  (*Id.* at ¶¶ 38, 41.)

However, plaintiffs allege that on September 1, 2021, all defendants issued a notice of proposed emergency rulemaking proposing the adoption of emergency regulations to implement minimum instream flows to protect anadromous fish and provide other public uses.  (*Id.* at ¶ 49.)  Plaintiffs allege that the effect of the proposed emergency regulations would require them, and their shareholders, "to forbear from exercising their vested rights to use water from Deer and Mill Creeks during irrigation season, thereby eliminating those rights."  (*Id.*)  On September 22, 2021, defendants Esquivel, D'Adamo, Maguire, Firestone, and Morgan considered the proposed emergency regulations at a regularly scheduled meeting of the Board.  (*Id.* at ¶ 55.)  Plaintiffs allege that at that meeting of the Board, no evidentiary hearing was held regarding the emergency regulations despite plaintiffs requesting such a hearing and pointing out that if the emergency

1    regulations were adopted and implemented an "inverse condemnation and taking would occur."

2    (*Id.* at ¶ 56.)  Plaintiffs also allege that their requests to cross-examine employees of the

3    Department, the Board, and NMFS who presented on the purported merits of the emergency

4    regulations at the meeting were denied.  (*Id.* at ¶ 57.)  At the conclusion of the Board's

5    September 22, 2021 meeting, defendants Esquivel, D'Admo, Maguire, Firestone, and Morgan

6    approved Resolution No. 2021-0038, which adopted the proposed emergency regulations, with

7    some minor modifications.  (*Id.* at ¶ 59.)  On October 4, 2021, the California Office of

8    Administrative Law approved the proposed emergency regulations, specifically, California Code

9    of Regulations title 23, §§ 876.5, 876.7, 878.4, and amended §§ 878.7, 879 ("the 2021 Emergency

10   Regulations"), which then went into effect.  (*Id.*)  On August 5, 2022, the Board defendants

11   issued a notice of re-adoption of the 2021 Emergency Regulations.  (*Id.* at ¶ 105.)  Plaintiffs

12   submitted timely written comments regarding the re-adoption of the 2021 Emergency

13   Regulations.  (*Id.* at ¶ 106.)  On August 16, 2022, defendants Esquivel, D'Adamo, Maguire,

14   Firestone, and Morgan approved Resolution No. 2022-0030, which re-adopted the proposed

15   emergency regulations as modified at the regularly scheduled meeting.  (*Id.* at ¶¶ 107, 113.)  On

16   September 21, 2022, the California Office of Administrative Law approved the proposed

17   emergency regulations ("the 2022 Emergency Regulations"), which then went into effect.  (*Id.* at

18   ¶ 113.)[2]

19        The Emergency Regulations declared that any diversions from Deer Creek and Mill Creek

20   would be deemed an "unreasonable use" if the diversions by water rights holders—no matter the

21   reason or purpose for the diversions—reduced the flow in those two creeks below a minimum

22   threshold set forth in the Emergency Regulations.  (*Id.* at ¶ 60.)  The minimum instream flows

23   established by the Emergency Regulations were deemed the minimum to ensure passage for

24   anadromous fish on Deer Creek and Mill Creek and those flow rates vary based on the time of

25   year and the presence of certain anadromous fish.  (*Id.*)  As a result of the Emergency

26

27   ───────────────
     [2]  Because the 2021 and 2022 Emergency Regulations are identical in relevant part, the court will
28   refer to them collectively as "the Emergency Regulations" or "the Regulations."

Regulations, plaintiffs allege that they are prohibited from diverting any water in Deer Creek and Mill Creek if those diversions would interfere with achieving the minimum instream flows for fish.  (*Id.* at ¶ 60) (citing Cal. Code Regs. tit. 23, § 876.5).  Importantly, the Emergency Regulations authorized defendant Ekdahl to issue curtailment orders if he determined that continued diversions of water would interfere with achieving the minimum instream flows.  (*Id.*) (citing Cal. Code Regs. tit. 23, § 876.5).

On October 11, 2021, defendants issued Water Rights Orders 2021-0089 (Mill Creek) and 2021-0090 (Deer Creek), which ordered the water rights holders on those creeks, including plaintiffs, to curtail their diversion of water beginning on October 15, 2021.  (*Id.* at ¶ 65.)  On October 7, 2022, defendants issued Water Rights Orders 2022-0169 (Mill Creek) and 2022-0170 (Deer Creek), which ordered the water rights holders on those creeks, including plaintiffs, to curtail their diversion of water beginning on October 15, 2022.  (*Id.* at ¶ 114.)[3]  According to plaintiffs, the effect of the Curtailment Orders and Emergency Regulations is that their "vested water rights . . . have been damaged and the reasonable value of the water was taken for public use by defendants."  (*Id.* at ¶ 67.)[4]

Additionally, plaintiffs allege that defendant Bonham violated the Endangered Species Act ("ESA") through his deficient maintenance of fish ladders and screens.  (*Id.* at ¶¶ 189–204.) Plaintiffs further allege that the Board defendants violated the ESA through the Emergency

---

[3]  Because the 2021 and 2022 Curtailment Orders are identical in relevant part, the court will refer to them collectively as "the Curtailment Orders" or "the Orders."

[4]  Plaintiffs request that judicial notice be taken of eight documents described above:  (1) a copy of Resolution No. 2021-0038 adopting the 2021 Emergency Regulations; (2) a copy of the 2021 Emergency Regulations; (3) a copy of Water Rights Order 2021-0089; (4) a copy of Water Rights Order 2021-0090; (5) a copy of Resolution No. 2022-0030 adopting the 2022 Emergency Regulations; (6) a copy of the 2022 Emergency Regulations; (7) a copy of Water Rights Order 2022-0169; and (8) a copy of Water Rights Order 2022-0170.  (Doc. No. 67.)  Defendants do not oppose plaintiffs' judicial notice request in their reply, and indeed the Board defendants requested that judicial notice be taken of certain of these documents previously (*see* Doc. Nos. 31-2; 61 at 9).  Plaintiffs' request will be granted in full.  *See Full Circle of Living & Dying v. Sanchez*, No. 2:20-cv-01306-KJM-KJN, 2023 WL 373671, at *2 n.1 & n.2 (E.D. Cal. Jan. 24, 2023) (taking judicial notice of "publications, statutes, and regulations related to the funeral industry" as well as government documents obtained from a website run by a California state agency).

1    Regulations and Curtailment Orders, which plaintiffs assert attracted salmon and steelhead into

2    harmful conditions in Deer and Mill Creeks, including subjecting the fish to the fish ladders and

3    screens deficiently maintained by defendant Bonham.  (*Id.* at ¶ 205.)  Plaintiffs provide more

4    detailed factual allegations regarding these claims in their SAC.  (*See id.* at ¶¶ 188–208.)

5          Based on the foregoing allegations, plaintiffs assert in their SAC the following eight

6    claims against the Board defendants:  (1) a 42 U.S.C. § 1983 claim for the taking of real property

7    without compensation in violation of the Fifth and Fourteenth Amendments; (2) a § 1983 claim

8    for a legislative taking of property without compensation in violation of the Fifth and Fourteenth

9    Amendments; (3) a § 1983 claim for the taking of real property without compensation through the

10   curtailment orders in violation of the Fifth and Fourteenth Amendments; (4) a § 1983 claim for

11   the taking of real property without compensation through the emergency regulations in violation

12   of the Fifth and Fourteenth Amendments: (5) a § 1983 claim for the failure to hold an evidentiary

13   hearing in violation of procedural due process and the Fifth and Fourteenth Amendments; (6) a

14   § 1983 claim for the failure to hold an evidentiary hearing with regard to the curtailment orders in

15   violation of procedural due process and the Fifth and Fourteenth Amendments; (7) a § 1983 claim

16   for the failure to hold an evidentiary hearing with regard to the emergency regulations in violation

17   of procedural due process and the Fifth and Fourteenth Amendments; and (8) a claim for

18   declaratory relief.  (*Id.* at ¶¶ 133–87.)  Plaintiffs also assert (9) a claim for violation of the

19   Endangered Species Act, 16 U.S.C. § 1538, against all defendants.  (*Id.* at ¶¶ 188–208.)  Finally,

20   plaintiff Stanford Vina asserts the following three claims against defendant Bonham:  (10) a §

21   1983 claim for the taking of real property without compensation in violation of the Fifth and

22   Fourteenth Amendments; (11) a § 1983 claim for the failure to hold an evidentiary hearing in

23   violation of procedural due process and the Fifth and Fourteenth Amendments; and (12) a claim

24   for declaratory relief.  (*Id.* at ¶¶ 209–27.)

25         On November 1, 2023, defendants filed the pending motion to dismiss certain of

26   plaintiffs' claims asserted in the SAC.  (Doc. No. 63.)  On November 29, 2023, plaintiffs filed

27   their opposition to the pending motion.  (Doc. No. 66.)  Defendants filed their reply thereto on

28   December 11, 2023.  (Doc. No. 68.)

1    **LEGAL STANDARD**

2         The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

3    sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

4    1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

5    sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901

6    F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to

7    relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

8    claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

9    the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

10   *Iqbal*, 556 U.S. 662, 678 (2009).

11        In determining whether a complaint states a claim on which relief may be granted, the

12   court accepts as true the allegations in the complaint and construes the allegations in the light

13   most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  However,

14   the court need not assume the truth of legal conclusions cast in the form of factual allegations.

15   *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not

16   require detailed factual allegations, "it demands more than an unadorned, the-defendant-

17   unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers

18   mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."

19   *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements

20   of a cause of action, supported by mere conclusory statements, do not suffice.").  It is

21   inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the

22   defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen.*

23   *Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

24        In ruling on a motion to dismiss under Rule 12(b)(6), the court is permitted to consider

25   material that is properly submitted as part of the complaint, documents that are not physically

26   attached to the complaint if their authenticity is not contested and the plaintiffs' complaint

27   necessarily relies on them, and matters of public record. *Lee v. City of Los Angeles*, 250 F.3d.

28   668, 688–89 (9th Cir. 2001).

7

**ANALYSIS**

**A.      Takings Claims (Claims 1–4, 10)**

The Eleventh Amendment prohibits federal courts from hearing suits brought by private citizens against state governments without the state's consent.  *Hans v. Louisiana*, 134 U.S. 1, 15 (1890); *Sofamor Danek Grp. v. Brown*, 124 F.3d 1179, 1183 (9th Cir. 1997); *Nat. Res. Def. Council v. Cal. Dep't of Transp.*, 96 F.3d 420, 421 (9th Cir. 1996).  The Eleventh Amendment specifically provides states with a sovereign immunity from suit, as opposed to a nonwaivable limit on the federal courts subject matter jurisdiction.  *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997); *see also Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 389 (1998).  This state sovereign immunity extends to state agencies and to state officers who act on behalf of the state regardless of the relief sought.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Krainski v. Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 967 (9th Cir. 2010).

The Supreme Court has established an important limitation on state sovereign immunity. *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254 (2011).  Specifically, the Eleventh Amendment "does not bar claims seeking prospective injunctive relief against state officials to remedy a state's ongoing violation of federal law."  *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 865 (9th Cir. 2016) (citing *Ex parte Young*, 209 U.S. 123, 149–56 (1908)).  This limitation, known as the *Ex parte Young* exception, "rests on the premise . . . that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes."  *Stewart*, 563 U.S. at 255; *see also Pennhurst*, 465 U.S. at 102.  "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"  *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Coeur d'Alene Tribe of Idaho*, 521 U.S. at 296).

In the pending motion to dismiss, defendants argue that plaintiffs' takings claims brought under the Fifth and Fourteenth Amendments are barred by state sovereign immunity as provided

1   for in the Eleventh Amendment.  (Doc. No. 63-1 at 11–14.)  In response, plaintiffs advance

2   arguments in their opposition that the court has already rejected in its Prior Order (*see* Doc.

3   No. 66 at 18–19, 22–23), cite authorities from other circuits with cursory analysis (*see id.* at 19–

4   20), and cite authorities with no relevance to the Eleventh Amendment (*see id.* at 20).  Plaintiffs

5   also attempt to distinguish the Ninth Circuit and Eastern District of California cases cited by the

6   court in the Prior Order.  (*See id.* at 20–21.)

7           In its previous order granting in part and denying in part defendants' motion to dismiss

8   plaintiff's first amended complaint ("the Prior Order"), the court dismissed plaintiffs' takings

9   claims.  (Doc. No. 61 at 11–15.)  In the Prior Order, the court granted plaintiffs leave to amend

10  their pleadings with allegations that plaintiffs "do not have available to them—now or in the

11  future—California's mechanism for recovering just compensation for an alleged taking in

12  violation of the Fifth Amendment," despite the court being "skeptical that plaintiffs can [do so]."[5]

13  (*Id.* at 14); *cf. Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180, 201 (2019) ("Today, because

14  the federal and nearly all state governments provide just compensation remedies to property

15  owners who have suffered a taking, equitable relief is generally unavailable.  As long as an

16  adequate provision for obtaining just compensation exists, there is no basis to enjoin the

17  government's action effecting a taking.").  Plaintiffs argue that the frequency with which

18  defendants have engaged in takings renders California's just compensation provision inadequate.

19  (Doc. No. 66 at 21–22.)  The only authority cited by plaintiffs in support of this argument is the

20  Eighth Circuit's decision in *Pharmaceutical Research and Manufacturers of America v. Williams*,

21  64 F.4th 932 (8th Cir. 2023).  In that case, the court concluded that the *Ex Parte Young* exception

22  was applicable to a takings claim and that injunctive relief was available because the potential

23  need to continuously file thousands of suits rendered Minnesota's inverse condemnation

24  provision inadequate.  *Id.* at 940–46, 948–50.  Plaintiffs argue that the situation presented in

---

25  [5]  The court highlighted several deficiencies in plaintiffs' takings claims and granted plaintiffs

26  leave to amend those claims for several reasons.  Because plaintiffs have again failed to
    sufficiently allege the inadequacy of California's just compensation provision, the court need

27  not—and therefore does not—consider whether plaintiffs have remedied the other deficiencies in
    their pleadings.

28

1   *Williams* is similar to that posed by defendants here issuing four emergency regulations in seven

2   years.  (Doc. No. 66 at 21.)  The court disagrees and also notes that while plaintiffs cite to several

3   paragraphs in their SAC in support of this argument (*see* Doc. No. 66 at 21–22), none of the cited

4   paragraphs contain anything more than conclusory assertions that just compensation remedies are

5   inadequate.

6          Accordingly, defendants' motion to dismiss plaintiffs' takings claims (claims 1, 2, 3, 4,

7   and 10) will be granted, without leave to amend.  (*See* Doc. No. 61 at 11–15); *see also Culinary*

8   *Studios, Inc. v. Newsom*, 517 F. Supp. 3d 1042, 1065 (E.D. Cal. 2021) (concluding that the

9   plaintiff's request for declaratory and injunctive relief under their takings claims did not provide a

10  basis for the *Ex parte Young* exception because there was no indication that the plaintiff could not

11  seek just compensation through state law procedures).[6]

12  **B.      Due Process Claims for Evidentiary Hearings Brought Against the Board**

13          **Defendants (Claims 5, 6, and 7)**

14          Defendants argue that plaintiffs' claims 5, 6, and 7 brought against the Board defendants

15  seeking evidentiary hearings must be dismissed because the Emergency Regulations and

16  Curtailment Orders were legislative in nature, not adjudicative, and thus did not require

17  evidentiary hearings under the Fifth and Fourteenth Amendments.  (Doc. No. 63-1 at 14–17.)

18          Plaintiffs argue that the court's Prior Order applied the wrong legal standard for

19  determining whether an action is legislative or adjudicative by considering whether or not the

20  Emergency Regulations and Curtailment Orders affected large areas and were directed at one or a

21  few individuals.  (Doc. No. 66 at 13–17.)  Plaintiffs contend that "[t]he 'large area' reasoning of

---

22  [6]  Plaintiffs also argue that "supplemental jurisdiction applies to the SAC's takings claims against
23  [the Board defendants], regardless of *Ex Parte Young*."  (Doc. No. 66 at 24.)  As with several of
     plaintiffs' arguments presented in opposition to the pending motion, the court clearly rejected this
24  same argument in its Prior Order.  (*See* Doc. No. 61 at 16 n.8) ("Plaintiffs also argue that even if
     their claims are barred under the Eleventh Amendment, they are properly heard under 28 U.S.C.
25  § 1367(a).  This argument has been explicitly foreclosed by the Supreme Court which has held
     'that § 1367(a)'s grant of jurisdiction does not extend to claims against nonconsenting state
26  defendants.'") (quoting *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 540–41 (2002)).  The
     judicial crisis in the Eastern District of California has been well-publicized.  The parties are urged
27  to read the court's orders and not waste those scarce judicial resources.

28

1   the [pending motion to dismiss] and [Prior Order] is not a legitimate or feasible standard for due

2   process hearing rights . . . ." (*Id.* at 14.)  Notably, plaintiffs provide no authority suggesting that

3   this standard has been repudiated by the Ninth Circuit. *Compare Samson v. City of Bainbridge*

4   *Island*, 683 F.3d 1051, 1061 (9th Cir. 2012) ("'[G]overnmental decisions which affect large areas

5   and are not directed at one or a few individuals' are legislative in nature . . . .") (citation omitted);

6   *Best Supplement Guide, LLC v. Newsom*, No. 20-17362, 2022 WL 2703404, at *2 (9th Cir. 2022)

7   ("[G]overnmental decisions which affect large areas and are not directed at one or a few

8   individuals do not give rise to the constitutional procedural due process requirements of

9   individual notice and hearing.") (citation omitted).[7]

10          Rather, plaintiffs argue, the proper "test for whether due process hearing requirements

11   apply is whether or not an action is generally applicable to an entire electoral class within the

12   government actor's jurisdiction." (Doc. No. 66 at 10.)  Plaintiffs cite several decisions from the

13   Ninth Circuit and Supreme Court for this proposition (*see id.* at 10, 13–17), but none of the cases

14   cited contains any language supporting such an argument.  Moreover, it is unclear what plaintiffs

15   mean by "electoral class" given that they provide as examples the "entire class of Oakland hotels"

16   and "all locations where the fish species migrate." (*See id.* at 10.)

17          Plaintiffs further argue that all actions "interfering with or modifying water rights are also

18   quasi-adjudicatory as a matter of law," (*see* Doc. No. 66 at 12), but as defendants point out (*see*

19   Doc. No. 63-1 at 15–16), the cases plaintiffs cite do not support such a broad proposition.  Indeed,

20   immediately after making this argument, plaintiffs acknowledge in their opposition that "courts

21   have endorsed [the Board's] authority to promulgate general policy statements of reasonableness"

22   without requiring evidentiary hearings. (Doc. No. 66 at 12.)

23          In its Prior Order, the court dismissed plaintiffs' due process claims brought against the

24   Board defendants because plaintiffs had "not plausibly alleged in their FAC—beyond conclusory

25   claims that their rights were impaired—how the temporary emergency regulations and

26

27   [7]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit
     Rule 36-3(b).

28

1  curtailment orders 'exceptionally affected [them] . . . on an individual basis' when the limitations

2  on water diversion were imposed on all water rights holders in the Mill Creek and Deer Creek

3  watersheds."  (Doc. No. 61 at 23–24) (quoting *Harris v. Cnty. of Riverside*, 904 F.2d 497, 502

4  (9th Cir. 1990)); *see also Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 446

5  (1915) (finding that a hearing was required when "[a] relatively small number of persons was

6  concerned, who were exceptionally affected, in each case upon individual grounds," but not when

7  "a general determination" has been made).  Plaintiffs added to their SAC new allegations that the

8  Board defendants "regulate and have jurisdiction over California's rivers, creeks, and other water

9  bodies" spanning millions of acres, that the Curtailments Orders stated the name of each affected

10  water rights holder, that the Emergency Regulations and Curtailment Orders made

11  "individualized decisions as to their unreasonableness,"[8] and that plaintiffs hold the rights to a

12  majority of the flow of Deer Creek and Mill Creek.  (Doc. No. 62 at ¶¶ 164–67.)  However,

13  plaintiffs do not provide any argument in their opposition explaining why these allegations are

14  sufficient to allege that they were exceptionally affected.  Instead, relying on their inaccurate

15  view of the law described above, plaintiffs argue that these allegations show that they "do not

16  comprise an entire class of California water right holders" and that they lack "meaningful

17  electoral recourse . . . ."  (Doc. No. 66 at 10–11.)

18      The court concludes that plaintiffs have again failed to sufficiently allege that the

19  Emergency Regulations and Curtailment Orders were adjudicatory in nature such that conducting

20  evidentiary hearings were required.  Plaintiffs allege that the Emergency Regulations and

21  Curtailment Orders affected all 22 water rights holders on Mill Creek and Deer Creek.  (Doc.

22  No. 62 at ¶ 165.)  Plaintiffs do not allege that they were targeted more so than the other water

23  rights holders on Mill and Deer Creeks, and at times appear to actually allege the opposite.  (*See

24  id.* at ¶ 140 ("The burdens associated with providing water to endangered fish species should

25  therefore be borne by the public as a whole, and not just by plaintiffs *and similarly situated water*

---

26  [8]  Plaintiffs do not explain further what this allegation means.  The court notes that plaintiffs

27  repeatedly allege elsewhere in their SAC that the Emergency Regulations constitute "automatic

  determination[s]."  (*See, e.g.*, Doc. No. 62 at ¶ 50.)

28

1   *rights holders*.") (emphasis added); *see also id.* at ¶ 77 ("Plaintiffs' senior rights were not

2   curtailed because, unlike most other water right holders in the Delta watershed, water is available

3   for diversion under plaintiffs' super-senior water rights.")).  Plaintiffs instead argue, unsupported

4   by authority, that the Board defendants should have modified the water rights of all water rights

5   holders in the state of California.  (Doc. No. 66 at 10.)  Moreover, plaintiffs' new allegations in

6   the SAC on this point are either conclusory or otherwise insufficient.  Plaintiffs allege that the

7   Curtailment Orders targeted plaintiffs by name, but a review of the Orders show that they apply in

8   broad terms to all water rights holders on the two creeks and simply include a list of all such

9   holders as an attachment at the end of each Order.  (*See* Doc. No. 67 at 63, 77, 121, 136.)

10  Nothing in the allegations of plaintiffs' SAC nor plaintiffs' opposition to the pending motion to

11  dismiss provides a basis upon which to find that the Emergency Regulations or Curtailment

12  Orders were adjudicative in nature.  (*See* Doc. No. 61 at 23–24); *see also Hotel & Motel Ass'n of*

13  *Oakland*, 344 F.3d at 969–70 (finding that the plaintiffs had failed to plausibly allege a procedural

14  due process claim against the city's promulgation of an ordinance affecting all hotels, even

15  though the ordinance was motivated by a subcategory of bad actors, because the ordinance did

16  not "specifically target[] a single individual's property for a zoning change" nor "exceptionally

17  affect[] . . . [the plaintiffs] on an individual basis"); *Samson*, 683 F.3d at 1056–60 & n.10 (holding

18  that an emergency ordinance imposing a moratorium on shoreline development that was enacted

19  without a public hearing did not run afoul of procedural due process because it "applied generally

20  to all owners of shoreline property on Bainbridge Island"); *cf. Bi-Metallic Inv. Co.*, 239 U.S. at

21  445 ("Where a rule of conduct applies to more than a few people, it is impracticable that everyone

22  should have a direct voice in its adoption.").

23          Because the allegations of plaintiffs' SAC indicate that the Emergency Regulations and

24  Curtailment Orders were legislative in nature, "due process is satisfied when the legislative body

25  performs its responsibilities in the normal manner prescribed by law."  *Halverson v. Skagit Cnty.*,

26  42 F.3d 1257, 1260 (9th Cir. 1994).  In this regard, plaintiffs allege in their SAC that they

27  received notice of the Board's promulgation and issuance of the Emergency Regulations and

28  Curtailment Orders, "participated orally and in writing in the meetings at which defendants voted

13

1     to adopt the emergency regulations and curtailment orders," and after adoption, plaintiffs "sought

2     reconsideration of the curtailment order[s]."  (Doc. No. 62 at ¶¶ 13, 49, 53, 105–07, 110–13.)

3     Moreover, plaintiffs do not respond to defendants' argument that the Board defendants' actions

4     were performed in the normal manner prescribed by law.  Plaintiffs thus have not plausibly

5     alleged a cognizable procedural due process claim brought against the Board defendants.  (*See*

6     Doc. No. 62 at 24); *see also Free Spirit Organics, NAC v. San Joaquin Cnty. Bd. of Supervisors*,

7     No. 2:17-cv-02271-KJM-JDP, 2022 WL 902834, at \*7 (E.D. Cal. Mar. 25. 2022) (finding that the

8     plaintiffs had failed to plausibly allege a procedural due process claim where the "plaintiffs do not

9     allege the County departed from its normal procedure for enacting an emergency moratorium"

10    ordinance temporarily limiting the production of industrial hemp).

11          Accordingly, the motion to dismiss plaintiffs' procedural due process claims brought

12    against the Board defendants will be granted.  Given plaintiffs' repeated failure to supply the

13    requisite allegations in support of those claims, leave to amend will be denied.

14    **C.**       **Endangered Species Act Claim (Claim 9)**

15          Plaintiffs assert a claim for violation of the Endangered Species Act ("ESA"), 16 U.S.C.

16    § 1538, against the Board defendants and defendant Bonham.  (Doc. No. 62 at 57.)  Plaintiffs

17    allege that in issuing the Emergency Regulations, the Board defendants created an imminent risk

18    of take by attracting salmon and steelhead into areas with fish screens that were deficiently

19    maintained by defendant Bonham.  (*Id.* at ¶¶ 205–08.)  Defendants' previous motion to dismiss

20    plaintiffs' ESA claim brought against defendant Bonham for his failure to maintain the fish

21    screens was denied in the court's Prior Order.  (Doc. No. 61 at 30–33.)  In their pending motion,

22    defendants do not challenge plaintiffs' ESA claim brought against defendant Bonham in the SAC.

23    (Doc. No. 63-1 at 19.)

24          However, defendants do argue that the ESA claim asserted against the Board defendants

25    must be dismissed because plaintiffs failed to secure leave to amend their ESA claim, which was

26    asserted only against defendant Bonham in the FAC.  (Doc. No. 63-1 at 19); *see also* Fed. R. Civ.

27    P. 15(a)(2) ("[A] party may amend its pleading only with the opposing party's written consent or

28    the court's leave.  The court should freely give leave when justice so requires.").  Defendants

1  further argue that because their previous motion to dismiss was denied with regards to plaintiffs'

2  ESA claim asserted against defendant Bonham, plaintiffs were not granted leave to amend their

3  ESA claim in the Prior Order.  (Doc. No. 63-1 at 19.)  Plaintiffs argue in opposition that they

4  stated their intent to add the Board defendants to their ESA claim in their motion for leave to

5  amend the FAC (Doc. No. 48) that was filed on November 14, 2022.  (Doc. No. 66 at 28.)

6  Defendants argue in reply that plaintiffs' motion for leave to amend the FAC was denied as moot

7  in light of the court's order adopting the parties' stipulation ("the Stipulation") (Doc. No. 55) to

8  permit plaintiffs to amend their pleadings "to assert challenges to the 2022 Regulations,

9  Resolution, and/or any 2022 Curtailment Orders" (Doc. No. 56 at 2).  (Doc. No. 68 at 16.)

10  Defendants argue that nothing in the Stipulation, the court's order adopting the Stipulation, or the

11  Prior Order granted plaintiffs leave to amend their pleadings to add the Board defendants to their

12  ESA claim.  (Doc. Nos. 63-1 at 19; 68 at 16.)

13      District courts in this circuit have held that "[w]here an amended pleading cannot be made

14  as of right and is filed without leave of court or consent of the opposing party, it is without legal

15  effect."  *Gengler v. United States ex rel. Dept. of Defense and Navy*, 463 F. Supp. 2d 1085, 1093

16  (E.D. Cal. 2006); *see, e.g.*, *Sanvelian v. Ryder Truck Rental, Inc.*, No. 20-cv-01314-ODW-SK,

17  2020 WL 4060176, at *3 (C.D. Cal. July 20, 2020) (quoting *Gengler*, 463 F. Supp. 2d at 1093).

18  However, many district courts "have agreed to consider an amended complaint served without

19  judicial permission as long as the court would have granted leave to amend if it had been sought

20  and none of the parties would be prejudiced by allowing the change."  *Rouchon v. Cnty. of Los*

21  *Angeles*, No. 2:18-cv-10029-VAP-MAA, 2019 WL 8755120, at *2 (C.D. Cal. Nov. 26, 2019)

22  (citation omitted); *see, e.g.*, *Sanvelian*, 2020 WL 4060176, at *3 (quoting *Rouchon*, 2019 WL

23  8755120, at *2); *cf. United States v. $11,500.00 in U.S. Currency*, 710 F.3d 1006, 1013 (9th Cir.

24  2013) ("Though Guerrero never moved to amend his claim, the absence of a formal motion for

25  leave to amend does not preclude the district court from granting it.").

26      The court concludes that plaintiffs failed to secure the court's leave to amend their FAC to

27  assert an ESA claim against the Board defendants.  Throughout plaintiffs' motion for leave to

28  amend their FAC, plaintiffs distinguished between two requested forms of amendment:  The

proposed SAC would (1) "update[] the claims to challenge both the 2021 regulations and curtailment orders and the renewed 2022 regulations and orders"; and (2) "also update[] the pleading to include the [Board defendants] as defendants to the ESA claim . . . ." (Doc. No. 48 at 5–6; *see also id.* at 10–11 (stating the same), 9 ("Defendants have had ample notice that plaintiffs would challenge defendants' actions in 2022 to renew the regulations and curtailment orders, as well as the violations of the ESA.")).  By contrast, the Stipulation only discusses leave to amend "to add claims challenging the 2022 Regulations . . . [and] Curtailment Orders." (Doc. No. 55 at 2.)  The Stipulation made no mention of amending any ESA claims, nor did the court's order adopting the Stipulation.  Moreover, plaintiffs base their ESA claim against the Board defendants on the Emergency Regulations and Curtailment Orders issued in both 2021 and 2022 (*see* Doc. No. 62 at ¶ 205), undercutting plaintiffs' argument that adding the Board defendants to their ESA claim is a method of challenging the 2022 Regulations and Orders.  Read in context, the court's order adopting the Stipulation does not permit plaintiffs to add their ESA claim against the Board defendants.

Nevertheless, the court concludes that leave to amend would have been granted had plaintiffs sought it and that defendants will not be unduly prejudiced by allowing the change. "Courts may decline to grant leave to amend only if there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc.'" *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  While consideration of the undue delay factor may arguably support denial of leave to amend in this regard here, defendants do not argue for—and the court does not find—any "bad faith or dilatory motive" on the part of plaintiffs.  *Foman*, 371 U.S. at 182.  Moreover, the proposed amendment would not be futile.  *See Pizana v. SanMedica Int'l LLC*, 345 F.R.D. 469, 484 (E.D. Cal. 2022) ("[A] proposed amendment is futile only if no set of facts can be proved under the amendment that would constitute a claim.").  Defendants argue that plaintiffs' allegations in the SAC show that the Emergency Regulations did not harm, but rather benefitted,

1    the endangered fish at issue.  (Doc. Nos. 63-1 at 20–21; 68 at 15–16.)  But in light of plaintiffs'

2    ESA claim premised on defendant Bonham's alleged failure to maintain the fish screens, as well

3    as plaintiffs' allegations in the SAC that the Emergency Regulations attracted salmon and

4    steelhead to those same dangerous and ill-maintained fish screens, there is certainly not "no set of

5    facts [that] can be proved under the amendment that would constitute a claim."  *Pizana*, 345

6    F.R.D. at 484.  Finally, amendment would not unduly prejudice any party.  The court notes that

7    defendants do not argue in the pending motion or in their reply brief that amendment would cause

8    undue prejudice.  Furthermore, discovery has not yet begun in this action, and adding the Board

9    defendants to the ESA claim would do little to enlarge the scope of discovery given that

10   plaintiffs' ESA claim brought against defendant Bonham is unchallenged.  *See Bencomo v. Cnty.*

11   *of Sacramento*, No. 2:23-cv-00440-DAD-JDP, 2024 WL 382381, at *3 (E.D. Cal. Jan. 31, 2024)

12   (finding no undue prejudice in part because the "defendants have not adequately demonstrated

13   that the scope of discovery will be expanded to an extent that unduly burdens them").  Indeed, the

14   court has yet to even issue a scheduling order in this action.

15           The court therefore proceeds to the merits of defendants' motion to dismiss plaintiffs'

16   ESA claim brought against the Board defendants.  As described above, plaintiffs allege that the

17   Emergency Regulations issued by the Board defendants attract salmon and steelhead to dangerous

18   fish screens resulting in their take.  Defendants' argument that the Emergency Regulations

19   actually benefit salmon and steelhead does not prevent the court from easily drawing the

20   reasonable inference that the Board defendants' alleged actions violated the ESA.  (*See* Doc.

21   No. 61 at 29–33.)

22           Accordingly, defendants' motion to dismiss plaintiffs' ESA claim brought against the

23   Board defendants will be denied.

24   **D.      Declaratory Relief (Claims 8 and 12)**

25           The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its

26   jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations

27   of any interested party seeking such declaration, whether or not further relief is or could be

28   sought."  28 U.S.C. § 2201(a).  "However, declaratory relief is a remedy, not a freestanding cause

1    of action, and Plaintiffs' action for declaratory relief survives only to the extent that Plaintiffs'

2    other causes of action state a claim for relief."  *Darling v. Green*, No. 12-cv-00362-PSG-CW,

3    2013 WL 12132058, at *9 (C.D. Cal. Apr. 18, 2013); *see also City of Reno v. Netflix, Inc.*, 52

4    F.4th 874, 878 (9th Cir. 2022) ("We agree with our sister circuits that have considered the issue

5    that the Declaratory Judgment Act does not provide an affirmative cause of action where none

6    otherwise exists."); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1097 (N.D. Cal. 2022)

7    ("The Declaratory Judgment Act does not provide an independent theory for recovery; if the

8    underlying claims are dismissed, . . . then there is no basis for any declaratory relief."); *Lorona v.*

9    *Ariz. Summit L. Sch., LLC*, 151 F. Supp. 3d 978, 997 (D. Ariz. 2015) ("The Second Amended

10   Complaint lists declaratory and injunctive relief as separate counts. . . . These are remedies, not

11   independent causes of action.").

12          1.    Claim 8

13          Plaintiffs assert a claim for declaratory relief against the Board defendants seeking a court

14   order declaring that their adoption and implementation of the Emergency Regulations and

15   Curtailment Orders are unlawful takings and violated plaintiffs' procedural due process rights

16   ("Claim 8").  (Doc. No. 62 at ¶¶ 181–87.)  Defendants argue that Claim 8 must be dismissed

17   because plaintiffs' other causes of action fail to state a viable claim against the Board defendants

18   for either an unlawful taking or a violation of procedural due process.  (Doc. No. 63-1 at 18.)

19   Plaintiffs appear to agree that Claim 8 rises or falls with their claims for unlawful takings and

20   violations of procedural due process asserted against the Board defendants.  (Doc. No. 66 at 26.)

21   Because these other claims will all be dismissed without leave to amend for the reasons explained

22   above, plaintiffs' Claim 8 seeking declaratory relief will also be dismissed without leave to

23   amend.

24   /////

25   /////

26   /////

27   /////

28   /////

1          2.      Claim 12

2          Lastly, plaintiff Stanford Vina asserts a claim for declaratory relief against defendant

3   Bonham[9] seeking a court order declaring that defendant Bonham's actions violated the ESA,

4   constituted an unlawful taking, and violated plaintiff's procedural due process rights.  (Doc.

5   No. 62 at 69.)  Defendants argue that this claim must be dismissed to the extent it requests

6   declaratory relief as to plaintiff Stanford Vina's unlawful taking claim asserted against defendant

7   Bonham.  (Doc. Nos. 63-1 at 19; 68 at 15.)  Because the underlying unlawful taking claim will be

8   dismissed without leave to amend, plaintiff Stanford Vina's claim for declaratory relief premised

9   on its unlawful taking claim asserted against defendant Bonham will be dismissed without leave

10  to amend.  In all other regards, Claim 12 will not be dismissed.

11                                    **CONCLUSION**

12         For the reasons explained above:

13      1.      Plaintiffs' request for judicial notice (Doc. No. 67) is granted;

14      2.      Defendants' motion to dismiss is granted in part and denied in part as follows:

15              a.      Plaintiffs' unlawful takings claims (claims 1, 2, 3, 4, and 10) are dismissed

16                      without leave to amend;

17              b.      Plaintiffs' claims for violations of due process asserted against defendants

18                      Ekdahl, Sobeck, Esquivel, D'Adamo, Maguire, Firestone, and Morgan

19                      (claims 5, 6, and 7) are dismissed without leave to amend;

20  /////

21

22  ───────────────
    [9]  While the SAC is ambiguous, plaintiff Stanford Vina appears to assert its Claim 12 seeking
    declaratory relief against both defendant Bonham and the California Department of Fish and
23  Wildlife.  Defendants move to dismiss any claims asserted against the Department on the grounds
    that the court previously granted defendants' motion to dismiss all claims asserted against the
24  Department without leave to amend.  (Doc. No. 63-1 at 17.)  The Department was then terminated
    as a named defendant in this suit pursuant to the Prior Order.  (Doc. No. 61 at 38.)  Plaintiffs
25  argue in opposition that they did not assert any claims against the Department in their SAC (Doc.
    No. 66 at 26), though the court notes that plaintiffs at one point refer to "CDFW Defendants" in
26  their opposition brief (*see id.* at 9).  In any event, defendants' motion to dismiss all claims
    brought against the Department will be granted.
27

28

       c.     Plaintiffs' claim for declaratory relief asserted against defendants Ekdahl, Sobeck, Esquivel, D'Adamo, Maguire, Firestone, and Morgan, seeking a court order declaring that their adoption and implementation of the Emergency Regulations and Curtailment Orders are unlawful takings and violated plaintiffs' procedural due process rights, is dismissed without leave to amend;

       d.     Plaintiffs' claim for declaratory relief against defendant Bonham seeking a court order declaring that defendant Bonham engaged in an unlawful taking is dismissed without leave to amend;

       e.     Defendants' motion to dismiss plaintiffs' Endangered Species Act claim asserted against defendants Ekdahl, Sobeck, Esquivel, D'Adamo, Maguire, Firestone, and Morgan is denied;

       f.     All of plaintiffs' claims asserted against the California Department of Fish and Wildlife are dismissed without leave to amend;

3. Within fourteen (14) days of the date of entry of this order, all parties shall submit a joint status report that includes the Rule 26(f) discovery plan and addresses the following matters:  (1) a brief summary of the claims and legal theories under which recovery is sought or liability is denied; (2) status of service upon all defendants and cross-defendants; (3) possible joinder of additional parties; (4) contemplated amendments to the pleadings; (5) the statutory bases for jurisdiction and venue; (6) contemplated motions and a proposed date by which all non-discovery motions shall be heard; (7) methods to avoid cumulative evidence, and anticipated limitations on the use of testimony under Federal Rule of Evidence 702; (8) a proposed date for final pretrial conference; (9) a proposed date for trial, estimated number of days of trial, and whether any party has demanded a jury; (10) appropriateness of special procedures such as reference to a special master or agreement to try the matter before a magistrate judge; (11) proposed modification of pretrial procedures due to the case's simplicity or complexity;

(12) whether the case is related to any other pending in this district; and

(13) optimal timing and method for settlement discussions.  The joint status report shall also address the scheduling of discovery, including:  (1) any proposed changes in the timing, form, or requirement for disclosures under Rule 26(a), including a statement as to when disclosures under Rule 26(a)(1) were made or will be made, and whether further discovery conferences should be held; (2) the subjects on which discovery may be needed and when it should be completed; (3) any proposed changes to the limits on discovery imposed under the Civil Rules; (4) the timing of the disclosure of expert witnesses and information required by Rule 26(a)(2); and (5) proposed dates for discovery cut-off.  All named parties shall participate in the preparation and completion of the joint status report;

4.     The court sets this case for a status conference regarding scheduling on July 2, 2024 at 1:30PM before Judge Drozd, to be held by Zoom only.  Parties will receive a Zoom ID number and password for the conference by email from Judge Drozd's Courtroom Deputy Pete Buzo (PBuzo@caed.uscourts.gov);

5.     Defendants shall file an answer responding to the claims remaining in plaintiffs' second amended complaint no later than twenty-one (21) days after the date of entry of this order.

IT IS SO ORDERED.

Dated:   **May 20, 2024**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE